[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12254

Non-Argument Calendar

_____

ROBERT O'HARE,

                                                                    Plaintiff,

VIRGINIA O'HARE,

Administratrix of the Estate of Robert O'Hare, deceased,

                                                        Plaintiff-Appellant,

*versus*

LAKE COUNTY FLORIDA,
et al.

                                                                Defendants,

2                    Opinion of the Court                    21-12254

CHAD HARMON,
in his official capacity Lake County Corporal,
RALPH CHRISTOPHER HUSKEY,
a.k.a. Christopher Huskey,
RICHARD WINN,
in his official capacity Lake County Detective,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:19-cv-00505-JSM-PRL

_____

Before ROSENBAUM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Robert O'Hare[1] sued three sheriff's deputies for using excessive force in arresting him. He appeals the denial of his motion for a new trial. He argues that the district court erred in admitting evidence that he had been charged with and convicted of

_____

[1] O'Hare passed away while this case was pending—for reasons unrelated to this case—and his mother was substituted in as a party because she is the administrator of his estate.

possessing child pornography.  Because this argument was unpreserved and because any error was not a miscarriage of justice, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the fall of 2015, Detectives Robert Hart (from the Lake County Sheriff's Office) and Sean Walsh (from the Ocoee Police Department) were collaborating on an investigation into child pornography-related activity on an internet cafe's IP address.  When Detective Walsh would detect child pornography-sharing activity on the cafe's IP address, Detective Hart would go to the cafe to try to determine who was using its wireless network.  After several visits, Detective Hart identified O'Hare as a common denominator and so the likely suspect.

On October 5 of that year, after O'Hare was again surveilled downloading child pornography at the cafe, officers followed him home, where the defendants—Deputies Chad Harmon, Ralph Huskey, and Richard Winn—made contact with him. Deputy Harmon invited O'Hare outside to ask for permission to search the residence, thinking O'Hare "might not want to discuss it in front of his mother."  When O'Hare refused and began to reenter the house, the deputies feared that he planned to destroy evidence, so they tackled and arrested him.  After the officers obtained and executed a search warrant, O'Hare was charged with possession of child pornography, voyeurism, possession of a short barrel shotgun, and resisting a law enforcement officer without violence.  He

pleaded nolo contendere and was sentenced to fifteen years' imprisonment.

O'Hare sued the deputies under 42 U.S.C. section 1983 for using excessive force in arresting him.[2] Before trial, O'Hare moved in limine to exclude any evidence: (1) that "directly describe[d] the subject matter of [the deputies'] investigation into [O'Hare]"; (2) that O'Hare was arrested for any crime; (3) that O'Hare was convicted of any crime; and (4) about any other crimes O'Hare was accused of committing after his arrest. O'Hare argued that evidence about the crime he was accused of committing: (1) wasn't relevant under Federal Rule of Evidence 401 because he admitted that there was probable cause to arrest him; (2) was unduly prejudicial under rule 403; and (3) was improper character evidence under rule 404(b). The only issue in the case, he said, was how much force the officers used in arresting him, so the precise crime was irrelevant and would only inflame the jury against him.

The district court partly granted the motion. The district court allowed the deputies to introduce evidence that they were investigating O'Hare for possession of child pornography but—because O'Hare's credibility was not at issue—the court excluded any

---

[2] He advanced other claims against other defendants, but all other claims and defendants were dismissed before trial and O'Hare doesn't appeal the dismissal.

evidence that O'Hare was arrested for, charged with, or convicted of that crime.[3]

At trial, O'Hare's mother testified that on the day of O'Hare's arrest she was upstairs when she heard screaming and yelling. When she came downstairs, she saw "on the floor, [her] son being beaten. It was, like, several men . . . with their arms going up and down and kicking at [her] son." She described Deputy Harmon as "beating [her] son['s]" head, face, and ears. She also said she saw Deputy Huskey kicking and punching O'Hare in his side. And she observed Deputy Winn striking her son in his lower back and falling on him while Deputies Huskey and Harmon continued to pummel him. O'Hare's mother said she yelled at the deputies to stop but they ignored her.

During her direct examination, the plaintiff also played a cell phone video O'Hare's mother recorded during the incident. On the video—which captured events after the deputies handcuffed O'Hare—O'Hare's mother could be "repeatedly heard stating that there was no probable cause for [O'Hare's] arrest."

The deputies cross-examined O'Hare's mother about whether they had probable cause to be at the house:

---

[3] The district court orally granted the motion and then issued a written order explaining that the motion was granted in part and denied in part "for the reasons stated on the record." O'Hare didn't submit the transcript of the hearing, so we rely on his (uncontested) representations about how the district court ruled, corroborated by the district court's characterization of its order at trial.

Q. You have no idea whether he was downloading child pornography or engaged in sharing of child pornography from the cafe; is that correct?

A. He wasn't.

Q. That's not my question. Do you have any personal knowledge that he was?

The district court called a sidebar and reminded the parties that the criminal proceedings weren't admissible but warned O'Hare that his mother was dangerously close to opening the door to rebuttal evidence of O'Hare's criminal offenses:

> [S]he's saying that he's done nothing in the cafe that had to do with child pornography. Now it's going to reach a point where it may become relevant for the defense to get it in. I don't know if that's how you want to proceed because if he was convicted of child pornography and she's—it's not [the defense]. It's her answers and what she said on the video . . . . I've tried to keep this out, but I think she's opening the door. And they're entitled to impeach her . . . . Now where [the defense is] in [its] questioning is that she doesn't know what happened at the cafe or what evidence they had or whether there was any probable cause at all. You can go down that road that she doesn't know there was probable cause even though she was yelling [in the video], "There's no probable cause." I'm just

warning the plaintiff that if she continues to deny all
this stuff, it may open the door [to O'Hare's criminal
proceedings].

The deputies continued questioning O'Hare's mother, and
she continued emphatically denying that her son had any involve-
ment with child pornography.  She called the suggestion "a big lie"
and said she'd never seen pornography in her home or on her fam-
ily's computers.  She explained that O'Hare had told her that he
didn't have any child pornography and that the child pornography
found on O'Hare's laptop belonged to its previous owner,
O'Hare's friend.  And she refused to admit knowing that her son
pleaded guilty to and was convicted of dozens of counts of posses-
sion of child pornography, as well as voyeurism and resisting arrest
without violence.  O'Hare's counsel didn't object to any of these
questions.

During the defense case, the deputies introduced into evi-
dence—without objection—O'Hare's plea agreement and judg-
ment showing that he was convicted of 52 counts of possession of
child pornography, 26 counts of felony voyeurism, resisting a law
enforcement officer without violence, and possession of a short
barrel shotgun.

The deputies also described their investigation into O'Hare
for child pornography.  And they described the level of force they
used to subdue O'Hare after he refused to either consent to a
search or step outside.  Deputy Harmon said that he didn't get
"hands-on" with O'Hare until O'Hare made an "abrupt move" to

"retreat further into the house," at which point Deputy Harmon grabbed O'Hare's shirt. He continued that O'Hare resisted arrest and unequivocally denied ever punching or kicking O'Hare. Deputies Huskey and Winn also testified that O'Hare resisted arrest, but both denied kicking or punching him. Deputy Winn admitted that he had performed two "knee strikes" to gain compliance. The deputies also introduced evidence that there were no injuries consistent with a beating: the paramedic who treated O'Hare testified that she saw only a minor abrasion on his temple and that O'Hare denied being in any pain and refused treatment and transportation to the hospital.

During closing arguments, O'Hare's lawyer candidly admitted that his client wasn't "the most sympathetic plaintiff" and that he didn't need to "sit here and tell you that child pornography is evil, and it's awful, and it should be a crime and should be prosecuted to the fullest extent of the law." Instead, he said, the lawsuit was brought "to stop this bone-headed, wrong police practice, and the unlawful use of force." He continued that "this case is not really about Mr. O'Hare. This is about the next Mr. O'Hare and the person after that . . . . [T]his is wrong, and what we are asking you to do is to set it right."

The jury returned a verdict for the deputies. After trial, O'Hare moved for a new trial under Federal Rule of Civil Procedure 59(a). He conceded that O'Hare's mother opened the door to evidence about her son's arrest and convictions but argued that the defense "asked questions on cross-examination [that] were

21-12254                Opinion of the Court                9

specifically designed" to provoke her into doing so.  O'Hare also contended that, even though O'Hare's mother opened the door, the district court had a duty to "guard against the floodgates opening . . . by conducting a [r]ule 403 balancing test" as to each piece of previously excluded evidence the defense sought to introduce. O'Hare argued that the district court erred in admitting a "plethora" of evidence that was unduly prejudicial to his claim that the deputies used excessive force to arrest him.

The district court denied the motion.  The district court noted that the jury heard O'Hare's mother repeatedly protest—on her cell phone video recording—that the deputies lacked probable cause to arrest O'Hare.  And so when she testified that the idea that her son was downloading and sharing child pornography was "a big lie," she opened the door to evidence of his criminal proceedings.  Two consequences followed, the district court said.  First, the deputies were entitled to elicit testimony during cross-examination that clarified issues—namely, probable cause and the facts surrounding O'Hare's arrest—that O'Hare raised on direct.  Second, the district court could, in its discretion, permit the deputies "to offer otherwise inadmissible evidence on the same matter" to rebut O'Hare's mother's misleading testimony.

## STANDARD OF REVIEW

We review for an abuse of discretion a denial of a rule 59(a) motion for a new trial. *McGinnis v. Am. Home Mortg. Serv., Inc.*, 817 F.3d 1241, 1255 (11th Cir. 2016).

## DISCUSSION

O'Hare argues that the district court erred in allowing the deputies to introduce evidence that he had been convicted of possessing child pornography because that evidence was unduly prejudicial and so should have been excluded under rule 403. We disagree that the district court abused its discretion, because O'Hare opened the door to the convictions evidence by introducing the issue of probable cause and through his mother's repeated denials that O'Hare was involved with child pornography. *See, e.g.*, *United States v. Johnson*, 730 F.2d 683, 691 (11th Cir. 1984) ("Although the district court may have been correct in initially determining that the prejudicial effect of the mortgage scheme outweighed its probative value, the court properly ruled that once defense counsel 'opened the door' on cross-examination, . . . the scheme's probative value was enhanced such that it outweighed its prejudicial effect."); *Shaps v. Provident Life & Acc. Ins.*, 244 F.3d 876, 886 (11th Cir. 2001) (concluding district court didn't abuse its discretion in admitting evidence of wealth of insurance claimant who "initiated the discussion of her financial condition" through her "opening statement and testimony on direct that she was in financial need of the benefits . . . [in] an attempt to sway the jury"). But, even assuming the district court abused its discretion, because the error was both unpreserved and not a miscarriage of justice, we affirm.

The error was unpreserved because O'Hare failed to object to any of the purportedly improper questions or evidence as

required in order to preserve the issue for appeal. *See* Fed. R. Evid. 103(a)(1) (explaining that a party must timely object to admission of evidence to preserve a claim of error for appellate review). Even when a district court excludes evidence in limine, "if the opposing party violates the terms of the initial ruling, objection must be made when the evidence is offered to preserve the claim of error for appeal. The error, if any, in such a situation occurs only when the evidence is offered and admitted." *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1305 (11th Cir. 2018) (quoting Fed. R. Evid. 103 advisory committee's note to the 2000 Amendments). Because O'Hare didn't object when the evidence was offered for admission, we review for plain error.

Allowing the questions and admitting the evidence of O'Hare's child pornography convictions wasn't plain error. "Under the civil plain error standard, 'we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice.'" *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017) (quoting *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir. 1982)). When that issue is the admission of evidence, "the evidence must have been so obviously inadmissible and prejudicial that, despite [the opposing party's] failure to object, the district court, sua sponte, should have excluded the evidence." *ML Healthcare*, 881 F.3d at 1305 (quoting *United States v. Williams*, 527 F.3d 1235, 1247 (11th Cir. 2008)).

Here, for two reasons, the evidence wasn't so prejudicial that the district court should have excluded it on its own.

First, the jury already knew—as early as the defense's opening statement—that O'Hare was mixed up with child pornography. To be sure, if O'Hare's crime hadn't been mentioned during the trial—and the jury had no idea what he was accused of—then the injection of child pornography may have been prejudicial. But child pornography was mentioned repeatedly throughout the trial. The district court, as part of its in limine ruling, allowed the parties to discuss the investigation into O'Hare. So the jury knew that the deputies went to O'Hare's house because they suspected he had child pornography. Deputy Harmon testified that he invited O'Hare outside to discuss the suspected child pornography to avoid embarrassing O'Hare in front of anyone he lived with. And O'Hare's lawyer told the jury in closing arguments that his client wasn't "the most sympathetic plaintiff" and that he didn't need to "sit here and tell you that child pornography is evil, and it's awful, and it should be a crime and should be prosecuted to the fullest extent of the law." The jury knew that O'Hare was involved with child pornography.

Second, the evidence of O'Hare's convictions did not result in a miscarriage of justice. *See Burch,* 861 F.3d at 1352. All three deputies admitted that they had used force against O'Hare but denied punching or kicking him—other than one who testified he had used two knee strikes to subdue O'Hare. O'Hare presented only the testimony of his mother to support his claim that the deputies

used excessive force. She testified at length to seeing the deputies repeatedly punch and kick him—to the extent that they fractured O'Hare's ribs. But even though she claimed to have witnessed the beating, the cell phone video she took did not show that O'Hare was beaten by the deputies. Instead, the video shows her *asking* her son—while he was being examined by a paramedic—whether the deputies had hit him. Additionally, the paramedic testified that O'Hare had no bruises, tenderness, or swelling (let alone tenderness or swelling consistent with broken ribs), reported no pain, and declined any medical treatment. In short, nearly all the evidence was inconsistent with the beating O'Hare's mother described witnessing.

For these reasons, we cannot conclude that the evidence of O'Hare's child pornography convictions was so obviously prejudicial that the district court should've excluded it sua sponte. Any error resulting from the district court's admission of the evidence was not a miscarriage of justice.

**AFFIRMED.**