PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-8780

_____

D. C. Docket No. 3:94-CR-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE CONDON, SAMUEL WILLIAM BRAWNER,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(January 8, 1998)**

Before EDMONDSON and HULL, Circuit Judges, and CLARK, Senior Circuit Judge.

PER CURIAM:

Defendants-appellants George Condon and Samuel William Brawner appeal from jury convictions for making false statements to the Small Business Administration ("SBA"), in violation of 15 U.S.C. § 645(a), and conspiracy to do the same. Because none of Defendants' issues merits reversal, we affirm.

## Background

2

In 1989 Defendants became involved in a real estate deal. Defendant Condon ("Condon") agreed to sell land and a building to Defendant Brawner ("Brawner"), on which Brawner intended to operate a restaurant. The two were assisted in the transaction by Condon's attorney, Marc Acree ("Acree").

To finance the purchase, Brawner was relying on a loan – of which 85% would be guaranteed by the SBA. In the process of

3

finalizing the involvement of the SBA, both Condon and Brawner signed documents and made certain representations – some of which later turned out to be false. The relevant statements included the amount to be personally invested by Brawner (a down payment and working capital); the amount actually paid to Condon as a down payment; the manner in which some of the funds were to be used; and the terms of

repayment on an additional construction loan (loaned to Brawner by a third party).

As it turned out, Brawner never invested his own funds in the restaurant, but instead borrowed the money necessary both to acquire and to run the restaurant -- contrary to the representations made by Brawner and Condon to the SBA. The restaurant suffered financially and was destroyed by fire soon after it opened. Brawner was charged with arson, making

5

false statements to the SBA (and conspiracy), insurance fraud, and mail fraud (related to his transmission of documents to the SBA through the mail). Condon was charged only with making false statements to the SBA and conspiracy.

Defendants were tried together. Both Defendants were found guilty of making false statements to the SBA and of conspiracy to defraud the SBA with these

statements. They appeal their convictions on several grounds.[1]

Both Defendants challenge the district court's jury instructions for failure to

---

[1] Brawner argued on appeal that the district court erred in its determination of the amount of restitution that should be paid by Brawner. But, the failure to raise this issue in the district court makes it an improper claim in this court. FDIC v. Verex Assurance, Inc., 3 F.3d 391, 395 (11th Cir. 1993) (court will generally not consider on appeal issues not raised before the district court). Thus, we do not discuss that issue. We also find Brawner's sufficiency of the evidence claim to lack merit and do not address that issue in this opinion.

include an instruction that materiality was an element of the offense under 15 U.S.C. § 645(a). In addition, Condon challenges the district court's decision to give no jury instruction about good faith reliance on the advice of counsel, and he challenges the district court's failure to sever his trial from Brawner's.

## Discussion

## I. Materiality

Defendants argue that the failure to include materiality as an element under 15 U.S.C. § 645(a) requires reversal of their convictions for making false statements to the SBA. Whether materiality is an element of 15 U.S.C. § 645(a) is a question of law, which we review de novo. See United States v. De Castro, 113 F.3d 176, 178 (11th Cir. 1997).

In United States v. *Wells*, 117 S.Ct. 921 (1997), we believe the Supreme Court has effectively guided us. In *Wells*, the Court addressed the issue of whether 18 U.S.C. § 1014 -- prohibiting false statements made to federally insured banks -- included a materiality element. The Court concluded that materiality was no element under Section 1014. *Id.* at 923.

Section 1014 contains language substantially similar to the language in

10

the statute underlying this prosecution, 15

U.S.C. § 645(a). Compare 18 U.S.C. § 1014:

> Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . shall be . . . imprisoned not more than 30 years . . . . (emphasis added);

with 15 U.S.C. § 645(a):

> Whoever makes any statement knowing it to be false, . . . for the purpose of influencing in any way the action of the [Small Business] Administration . . . shall be punished . . . by imprisonment for not more than two years . . . . (emphasis added).

11

The language of Section 1014 played a big part in the Supreme Court's conclusion that materiality was no element for that statute:

> Nowhere does [Section 1014] say that a material fact must be the subject of the false statement or so much as mention materiality. To the contrary, its terms cover 'any' false statement that meets the other requirements in the statute, and the term 'false statement' carries no general suggestion of influential significance.

Wells, 117 S.Ct. at 927 (footnote omitted) (citation omitted) (emphasis added). "Nor have respondents come close to showing

that at common law the term 'false statement' acquired any implication of materiality that came with it into § 1014." *Id.* The Court finished by noting that Congress was fully able to be clear when materiality was an element of a crime, because other statutory sections about false statements are explicit in their requirement of materiality. *Id.* at 928 & n.11; *See also* 18 U.S.C. § 1621 (prohibiting statements under oath about "any material matter which [one] does not

believe to be true"); 18 U.S.C. § 1001 (prohibiting "knowingly and willfully falsif[ying] . . . a material fact").

The same observations made by the Court in *Wells* apply to the statute in this case, 15 U.S.C. § 645(a). Section 645(a) also fails to mention materiality and expressly prohibits "any" false statements made to the SBA.

After *Wells*, we examined another statute for a materiality element. *See De*

_Castro_, 113 F.3d 176 (determining whether materiality is element of 18 U.S.C. § 1010).

We decided that Section 1010 also includes no materiality element. Again, that Section's language is similar to the language in Section 645(a).[2]

---

[2]Section 1010 provides that:
Whoever, for the purpose of obtaining any loan ... from any person ... with the intent that such loan . . . shall be offered to or accepted by the Department of Housing and Urban Development for insurance ... or _for the purpose of influencing in any way_ the action of such Department, makes, passes,

Because of the similarities among 15 U.S.C. § 645(a) and 18 U.S.C. §§ 1010 and 1040, and in the light of _Wells_ and _De Castro_, we conclude that section 645(a) does _not_ include the element of materiality. So, the district court's instruction on the elements of the offense was not erroneous.

---

utters, or publishes _any statement, knowing the same to be false_ . . . shall be fined . . . or imprisoned . . ., or both.

18 U.S.C. § 1010 (emphasis added).

16

## II. Advice of Counsel Instruction

Condon argues that the district court erred when it failed to instruct the jury about his claim of good-faith reliance on the advice of his counsel. We review a district court's refusal to give a requested jury instruction for abuse of discretion. United States v. Wescott, 83 F.3d 1354, 1357 (11th Cir. 1996). There was no abuse of

discretion in this case. no such instruction was required.

To be entitled to a good-faith reliance instruction, a defendant must show that (1) he fully disclosed all material facts to his attorney; and (2) he relied in good faith on advice given by his attorney. See United States v. Johnson, 730 F.2d 683, 686 (11th Cir. 1984). "[A]n instruction should not be given if it lacks evidentiary support or is based upon mere suspicion or

speculation." <u>United States v. Lindo</u>, 18 F.3d 353, 356 (6th Cir. 1994) (citation omitted).

Condon failed to introduce evidence that he fully disclosed all material facts to his attorney, Acree, or that he acted in good faith reliance on the advice of Acree. At the trial, neither Condon nor Brawner testified. Thus, the only evidence about the relationship between the Defendants and Acree came from the attorney's own testimony.

Condon and Brawner came to Acree for assistance with the sale of Condon's property to Brawner. Acree had never before represented either Defendant. Acree told Defendants that he "did not handle SBA loans," had no experience with the SBA and knew nothing about SBA loans. It was Acree's understanding that Brawner – it was Brawner's SBA loan – was dealing with the SBA "directly" and that Acree "was not going to be doing the

20

SBA loan." Acree, however, agreed to represent Condon, as the seller, in the sale of the land: "preparing the documents necessary . . . to be able to sell the property," to draft "a sales contract," "to find out who owned the property," "to find out the description of the property," and the like.

During this representation of Condon, Acree was told something about the Defendants' dealings with the SBA. But,

Acree testified that he was never told that Condon received none of the $100,000 down payment that was required (the down payment was represented to the SBA as having been paid):

> I believed that Mr. Condon had at the time of the . . . closing received $50,000 from Samuel Brawner. I also believed that Mr. Brawner had gotten $100,000 or thereabouts from [a] relative, which had — part of it had remained with Mr. Condon and part of it paid back to Mr. Brawner [for working capital as required by the SBA and the lender].

22

Acree also testified that he — in the presence of Defendants — reviewed a letter from Brawner's lender to Brawner in which it was written that "Mr. Condon had been paid $100,000 and he was to refund back $50,000 to Mr. Brawner." Again, nobody mentioned to Acree that the $100,000 had not actually been paid. That Condon never received a down payment and, thus, Brawner never invested — or put at risk — his own funds went to the

heart of the misrepresentations made by Condon to the SBA. The record shows that material facts related to Condon's misrepresentations were not disclosed to Condon's attorney.

Condon has never contended that his attorney actually told him that the $100,000 misrepresentation was lawful. Condon says he should be able to rely on Acree's silence on the subject. In addition to his failing to disclose the pertinent

facts to Acree, Condon has failed to point us to evidence in the record which could support the idea that reliance on Acree's silence was reasonable and in good faith.

Three weak points face us. First, in claiming that he relied on the silence of an expert, Condon must have evidenced that he could reasonably believe Acree to be an expert in the area of SBA financing. This means the record needs to show it was

reasonable for Condon to view Acree as such an expert, even given Acree's uncontroverted testimony that both Defendants knew that Acree did not do SBA loans. Second, the record scarcely supports the conclusion that Acree's duty of representation of Condon extended to the SBA loan to Brawner. And, Condon's reliance would have been on the lawyer's silence about a subject which, at best, was on the periphery of the scope of his

26

representation. Third, Condon does not dispute that he was never paid the necessary $100,000 down payment; yet, he wishes to claim good faith reliance on advice (or, more correctly, on the lack of an advisory warning) that lying about this simple fact would not be unlawful. We have said before that reliance on approving advice about such obvious dishonesty "would clearly be outside of the 'good faith' prong of the expert advice

defense." Johnson, 730 F.2d at 687 n.3.

Considering these points, the record will not support that Condon's reliance on the lawyer's silence was reasonable and in good faith.[3]

---

[3]Although the district court did not instruct the jury about good faith reliance on the advice of counsel, the court did include an instruction on good faith in general: "[G]ood faith is a complete defense to the charges in the indictment since good faith on the part of the defendant is inconsistent with intent to defraud or willfulness . . . ." The district court adequately addressed the concepts of willfulness and good faith. In closing argument, Condon's trial attorney

"Thus, since the record failed to show adequate evidentiary support for the instruction, the district court did not abuse its discretion in refraining from charging the jury on advice of counsel." United States v. Durnin, 632 F.2d 1297, 1301 (5th Cir. 1980) ("[T]here is no evidence in

_____

addressed the possibility that Condon may have relied, in good faith, on Acree's silence. "So, the jury essentially considered the defense of good faith [reliance on advice of counsel] and rejected it when it found [Condon] guilty." United States v. Walker, 26 F.3d 108, 110 (11th Cir. 1994).

29

the record that [defendant] either sought the advice of counsel, personally received advice after full disclosure, or followed the advice in good faith."); See also Lindo, 18 F.3d at 357.[4]

---

[4]Condon argues that he did introduce sufficient evidence for the instruction. He points us to Acree's admission that he may have failed Condon in his duty to prevent Condon from engaging in illegal activity. But, this conclusory testimony does not support the contention that Acree was made aware of all material facts of the transaction so that Condon could have in good faith relied on Acree's failure to spot and then to inform Condon of the illegality. That Acree now feels badly

## III. Severance

Condon claims that his trial should have been severed from Brawner's, because of the disparity in the charges against them: only Brawner was charged with arson-related offenses. Condon chiefly argues

---

about what happened does not show that he had the duty — given the scope of his representation — to do everything possible to protect Condon from Condon's own acts and omissions about the SBA loan. Thus, the evidence relied upon by Condon does not demand an instruction on good faith reliance on the advice of counsel.

31

that Brawner's defense to the arson charges — that other persons had better motives to have set the fire — prejudiced Condon. We review the district court's refusal to sever the defendants' trials for abuse of discretion. United States v. Cross, 928 F.2d 1030, 1037 (11th Cir. 1991) (citation omitted).

Condon's main point is based on the closing argument by Brawner's attorney. The relevant portion of that argument

stated that "there's going to be some money left over from the insurance if the building burned down to the ground, and this money, I would suggest to you, certainly one person it could have gone to is Mr. London." This statement came in the middle of a discussion of several other persons who could have burned down the restaurant and of persons who had a financial stake in the restaurant. Brawner's counsel continued by saying,

33

"I'm not suggesting – we're not trying to prove that any particular person burned that restaurant. We are just trying to show you there's lots of reasonable doubt that Mr. Brawner did, and only Mr. Brawner is on trial for that . . . ."

To be entitled to severance, and to overcome the presumption that jointly indicted defendants be tried together, Condon must show actual, compelling prejudice. See United States v. Gonzalez,

34

940 F.2d 1413, 1428 (11th Cir. 1991); <u>United States v. Castillo-Valencia</u>, 917 F.2d 494, 498-99 (11th Cir. 1990). Condon argues that such prejudice can be found in Brawner's closing argument.[5]    But, limiting

_____

[5] Condon also argues that he was prejudiced by the inability to introduce evidence that he was misled by Brawner about the loans. But in the light of the overwhelming evidence against Condon in this case, the absence of this evidence cannot amount to compelling prejudice.    Much of the evidence Condon claimed was improperly excluded went to his defense that Brawner misled him about the contents of the documents they both signed. Some evidence to that fact was admitted, but the district

instructions were given about the importance of applying evidence of the arson charge only to Brawner. Limiting instructions of this kind are presumed to protect against prejudice in joint trials. Gonzalez, 940 F.2d at 1428.

---

court excluded testimony that Brawner had later told people that he used the loan money "to take trips, to pay for his wife's tuition, [and] to go to Georgia football games." None of this evidence was exculpatory for Condon, and Condon presented no defense that was mutually exclusive of Brawner's. Thus, severance was not required. Cf. Zafiro v. United States, 113 S.Ct. 933 (1993).

36

The cautionary instructions given by the district court in this regard were adequate. And, the trial was distinctly separated into two segments: the portion for the false-statement charges and the portion against Brawner for arson and mail fraud. At several points during the trial, the court explained that evidence admitted for the purpose of proving the arson, or other charges pending only against Brawner, was not to be used in

the consideration of Condon's guilt or innocence. For example, before the arson portion of the trial the court told that jury that:

Mr. Sam Brawner is charged in this case with arson ... in addition to the conspiracy in making false statements concerning the S.B.A. loan.

On the other hand, Mr. George Condon is charged only with conspiracy to make and making false statements to the S.B.A., and is not charged with any of the arson-related charges.

Now, you have already heard and you are about to hear further evidence regarding the arson-

related charges. This evidence is admitted solely against Mr. Brawner and is not admitted and should not be considered by you in any respect with regard to Mr. Condon. It is your duty to give separate and personal consideration to the case of each individual defendant.

When you do so, you should analyze what the evidence in the case shows with respect to that individual defendant, leaving out of consideration entirely any evidence admitted solely against the other defendant.

In this case, the evidence of alleged arson and insurance fraud should not be considered at all for any purpose against Mr. Condon.

At the trial's end, the district court further explained the proper use of the evidence of arson in its jury instructions:

> In certain instances, evidence may be admitted only concerning a particular party or only for a particular purpose and not generally against all parties or for all purposes.
>
> For example, you have heard substantial evidence regarding a fire at the restaurant involved in this case and the cause of this fire. The government contends that Mr. Brawner is responsible for this fire. Mr. Brawner denies responsibility.

Mr. Condon is not charged with responsibility for this fire. None of the evidence received concerning the fire is admissible as to Mr. Condon and should not be considered by you in any respect in deciding the charges against Mr. Condon.

These instructions are good enough; and the instructions, along with the overwhelming evidence against Condon, demonstrate that no compelling prejudice was suffered by Condon as a result of the joint trial.

## Conclusion

Because we find no reversible errors in the trial of either Condon or Brawner, we affirm their convictions.

AFFIRMED.