The PEOPLE of the State of
Colorado, Complainant,

v.

Michael Thomas MITCHELL,
Attorney–Respondent.

No. 98SA72.

Supreme Court of Colorado,
En Banc.

Nov. 30, 1998.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Michael Thomas Mitchell, Pro Se, Parker.

PER CURIAM.

The respondent in this lawyer discipline case, Michael Thomas Mitchell, misrepresented that a woman owned the majority of stock in a corporation because he believed that it would be easier to obtain a loan and a liquor license if a woman were the owner. The hearing board recommended that the respondent be publicly censured and ordered to comply with certain conditions involving a mentor. A hearing panel of the grievance committee approved the findings but modified the recommendation of discipline to a suspension for ninety days. We conclude that the misconduct is serious enough to warrant suspension for a year and a day, and we so order.

## I.

Michael Thomas Mitchell was admitted to practice law in Colorado in 1978. After a contested hearing, the hearing board made the findings below by clear and convincing evidence.

In 1993, Mitchell and his friends, Alan Battaglia and Sandra Church, wanted to buy a bar called The Molly Brown. Mitchell created a corporation, Shoot the Moon, Inc., to purchase the bar. However, Mitchell, Battaglia, and Church needed a loan for the purchase. To this end, the three agreed informally that Church, a woman, would be listed as an 80% shareholder of the corporation to assist them in obtaining a Small Business Administration (SBA) "guaranteed loan." Therefore, on or about January 3, 1994, Mitchell prepared two different sets of organizational minutes for the corporation. The first set of minutes stated that Battaglia was president and treasurer of the corporation and Mitchell was the vice-president and secretary. It further stated that the two shareholders, Battaglia and Mitchell, each owned 50% of the stocks. The second set named Church as the secretary and treasurer and 80% shareholder. Battaglia and Mitchell supposedly each owned only 10% of the shares in Shoot the Moon.

On January 8, 1994, Mitchell, Battaglia, and Church submitted a loan application to the SBA. Mitchell and the others signed the application. It represented that Church was an 80% owner of the corporation seeking the loan, and Mitchell and Battaglia were each 10% owners.

On January 4, 1994, Mitchell prepared an application for a liquor license listing Church as an 80% shareholder of Shoot the Moon, and Mitchell and Battaglia as owning the remaining shares equally. Mitchell and Battaglia submitted the application, signed by Battaglia, to the City of Littleton on January 17, 1994. The liquor license was granted on April 13, 1994, and The Molly Brown opened for business.

The personal relationship between Church and Battaglia deteriorated, and in late 1994 Mitchell and Battaglia took steps to cut Church off from any involvement with the bar and the corporation. Church hired a lawyer who wrote to Mitchell on December 13, 1994 demanding Church's 80% interest in the corporation and asserting a claim for past wages for working at The Molly Brown. Mitchell replied on December 19 that Church was neither a shareholder nor an employee of the corporation. Church then filed an action in Arapahoe County District Court against Mitchell and Battaglia. Thereafter, in a deposition taken in the Arapahoe County case, Mitchell testified under oath that Battaglia and he each owned 50% of Shoot the Moon.

The hearing board concluded that at the time Mitchell prepared the loan documents and the organizational minutes, the shares of Shoot the Moon were in fact equally owned by Mitchell and Battaglia. The hearing board further found that Mitchell, Battaglia, and Church included the false statement regarding Church's ownership in the SBA loan application for the purpose of misleading the SBA and creating the impression that the corporation was substantially owned by a woman. In addition, the board determined that the second set of organizational minutes prepared by Mitchell were false and misleading because they created the impression that the majority shareholder of the corporation was a woman. Mitchell's conduct violated Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and C.R.C.P. 241.6(3) (violating the highest standards of honesty, justice, or morality). Finally, the hearing board, without explanation, found that neither the SBA, the City of Littleton, nor Sandra Church was harmed by Mitchell's misrepresentations regarding her ownership of the corporation.

## II.

The hearing board recommended that Mitchell be censured publicly and be required to enter into a mentoring relationship with another lawyer. The hearing panel modified the recommendation to a ninety-day suspension. The complainant excepted to the panel's recommended sanction as too lenient.

Mitchell has also filed exceptions. He contends that the evidence at the hearing and

the board's findings went beyond the trial management order; that the evidence was insufficient for the board to have made its findings by the standard of clear and convincing evidence; and that the recommended sanction of a ninety-day suspension is excessive.

With respect to a trial management order in a lawyer discipline case, C.R.C.P. 241.14(5) provides in part:

(5) **Discovery.**

(A) **Purpose and Scope.** Rules 16 and 26 of the Colorado Rules of Civil Procedure shall not apply to proceedings conducted pursuant to these Rules. This Rule shall govern discovery in lawyer discipline and disability proceedings.

. . .

(D) **Trial Management Order.** Upon the request of one of the parties or upon order of the presiding officer of the hearing board, no later than 45 days prior to the trial date, the parties shall disclose to the other party and file a trial management order containing the following matters under the following captions and in the following order:

(I) **Statement of Claims and Defenses to be Pursued or Withdrawn.** The parties shall set forth a listing of the claims and defenses remaining for trial. Any claims or defenses set forth in the pleadings which will not be at issue at trial shall be designated as "withdrawn."

. . .

(IV) **Legal Issues.** The parties shall set forth a list of legal issues that are controverted, including appropriate citation of statutory, case or other authority.

*Id.*

The trial management order in this case provided that the following legal issues were in controversy:

A. Whether the respondent violated C.R.C.P. 241.6.

B. Whether the respondent violated C.R.C.P. 241.6(4) (a lawyer shall not engage in gross negligence).

C. Whether the respondent violated C.R.C.P. 241.6(3) (a lawyer shall not vio-

late the highest standards of morality and honesty).

D. Whether the respondent violated Colo. RPC 1.3 (a lawyer shall not neglect a legal matter entrusted to him).

E. Whether the respondent violated Colo. RPC 1.4(a) (a lawyer shall not fail to communicate with his client).

F. Whether the respondent violated Colo. RPC 1.4(b) (a lawyer shall not fail to respond to a reasonable request for information).

G. Whether the respondent violated Colo. RPC 8.4(c) (a lawyer shall not engage in dishonesty, fraud or misrepresentation).

H. On January 8, 1994, did the respondent misrepresent the ownership interest in Shoot the Moon, Inc. to the First National Bank of Parker or the SBA?

I. On January 17, 1994, did the respondent misrepresent the ownership interests in Shoot the Moon, Inc. to the City of Littleton Liquor Licensing Authority?

Mitchell's objection apparently is that the hearing board's findings encompassed matters beyond those contained in paragraph (H), which refers to the date the loan application was submitted to the SBA, and paragraph (I), which refers to the date the liquor license application was submitted to the City of Littleton. Mitchell does not claim, however, that the board's findings went outside of the formal complaint filed against him. As the discipline imposed herein arises out of the submission of the loan and liquor applications, his first exception is overruled.

■ Mitchell's second exception is that the evidence presented at the hearing was insufficient to establish by a clear and convincing standard that when the applications to the SBA and liquor licensing authority were prepared and filed that Church was not an 80% owner of Shoot the Moon. He bases this contention on Battaglia's and Church's testimony, as well as his own.

■ We do not review the hearing board's factual findings de novo, however. "When they are approved by the hearing panel, the board's factual findings are binding on this court unless, after considering the record as

a whole, the findings are unsupported by substantial evidence." *People v. Dieters*, 825 P.2d 478, 481 (Colo.1992). In addition to the testimony of the three principals, the hearing board considered evidence of the existence of two inconsistent sets of corporate minutes executed on the same day; the purported transfer of 80% of Shoot the Moon to Sandra Church for no apparent consideration; and, according to Mitchell, the revocation of Church's interests under an unwritten agreement that Church testified was not disclosed to her. This misconduct supports the hearing board's findings and we will not overturn them.

■ Mitchell's final claim is that the recommended sanction of a ninety-day suspension is excessive. As noted above, however, the complainant asserts that a ninety-day suspension is too lenient.

We disbarred a lawyer in *People v. Kiely*, 968 P.2d 110, 112 (Colo.1998) for knowingly making false statements to obtain a loan from a federally insured savings and loan, in violation of 18 U.S.C. § 1014, a felony. *See Kiely*, 968 P.2d at 111. Kiely pled guilty in the United States District Court for the Western District of Pennsylvania to a federal felony.

The fact that Mitchell has not been charged with criminal conduct is not dispositive for our purposes. *See People v. Musick*, 960 P.2d 89, 92 (Colo.1998) (holding that the nature of the lawyer's conduct itself, rather than the presence or absence of criminal charges, was what was significant for discipline purposes); *People v. Koller*, 873 P.2d 761, 763 (Colo.1994) (violating fraudulent conveyance statute warranted suspension for a year and a day despite absence of criminal charges). The hearing board found that Mitchell knowingly misrepresented the true facts to both the SBA and to the City of Littleton. The hearing panel further concluded that Mitchell's conduct was "more

than knowing, involved a pattern, and extended over a period of time."

The hearing board also determined that neither the SBA nor the liquor licensing authority was harmed by Mitchell's misrepresentations, presumably because the gender of Shoot the Moon's owner did not play a part in the decision to grant the loan or the liquor license. We find, however, that the hearing board's conclusion that the SBA "was [not] harmed by Mitchell's misrepresentations" is not supported by substantial evidence in the record and therefore does not bind us. *See Dieters*, 825 P.2d at 481.

The SBA was harmed by Mitchell's misrepresentations in the loan application by virtue of the resultant loss of integrity in the SBA's books and records. Mitchell, Battaglia, and Church surmised that their chances of obtaining an SBA guaranteed loan from a financial institution would be enhanced if the SBA believed that Church, a female, was listed as a majority shareholder.[1] Because the loan application stated that Church was the majority owner, the SBA books and records necessarily reflect the loan as one placed with a woman-owned firm. As disclosed in the application itself, the SBA uses the information provided, including the gender of "management" for "statistical purpose only."[2] Because they had previously agreed that 50% of Shoot The Moon's stock was owned by Mitchell and 50% by Battaglia, another male, the statistical information in the application showing Church as the majority owner was false. Since the SBA relies upon the information in the application for its statistical information, the SBA's books and records are likewise in error. As do other federal agencies, the SBA reports annually to Congress, indicating among other matters the number and nature of the beneficiaries of its services and benefits. It is that information, along with other considerations, upon which Congressional legislation and our national public policy may well rest.

1. On the "U.S. Small Business Administration Application for Business Loan" dated January 8, 1994, Church appears as *both* an 80% owner and the secretary/treasurer of the corporation.

2. The loan application states Church is the secretary/treasurer. Even assuming Church was at

one time an 80% owner of the corporation's stock, the SBA examines both ownership and control to determine the status of a firm. The fact that Church is reflected as an officer when she was not has implications as well.

Therefore, the hearing board's conclusion that Mitchell's misrepresentations caused no actual harm goes more to the relationship between Shoot The Moon and the lending institution, not the SBA. Such findings are insufficient to address the resultant harm caused to the integrity of the SBA's books and records and, as a consequence, to the public.

■ Even more important, however, is the probability that this case presents serious, albeit uncharged, criminal conduct of a nature which makes disbarment, as in *Kiely*, a possibility. The knowing submission of a false statement to the SBA for the purpose of obtaining a loan is a felony under federal law:

> Whoever makes any statement knowing it to be false ... for the purpose of obtaining for himself or for any applicant any loan, ... or for the purpose of influencing in any way the action of the [Small Business] Administration, ... shall be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both.

15 U.S.C. § 645(a) (1994). Violation of this statute is every bit as serious as knowingly making a false statement to obtain a loan from a federally insured savings and loan in violation of 18 U.S.C. § 1014, as did the lawyer in *Kiely*. The Eleventh Circuit Court of Appeals has recently held that the materiality of the false statement is not an element of the offense of making a false statement to the SBA. *See United States v. Condon*, 132 F.3d 653, 655–56 (11th Cir.1998). The court of appeals relied on the Supreme Court's decision in *United States v. Wells*, 519 U.S. 482, 490–91, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997), which found that the materiality of the false statement is not an element of the offense of knowingly making a false statement to a federally insured bank in violation of 18 U.S.C. § 1014. *See Condon*, 132 F.3d at 655–56; *see also Owen v. United States*, 386 F.2d 774, 775 (5th Cir.1967) (holding that the gravamen of the violation of 15 U.S.C. § 645(a) is the making of the false statement, knowing it to be false, for the purpose of obtaining the loan notwithstanding that the SBA became aware of the false statements and denied the loan). The lawyer's mental state is an important factor when considering the proper disciplinary sanction. Had things been as Mitchell believed, namely that the representation that the corporation was owned by a woman would influence the SBA into guaranteeing the loan, disbarment would be the presumed sanction. *See Kiely*, 968 P.2d at 112.

However, because such a disposition was neither factually developed below nor argued before us, we do not further address the sanction of disbarment. Nevertheless, we do not intend to disapprove consideration of such a sanction in future cases of similar nature.

Finally, Mitchell has previously received three letters of admonition for unrelated conduct, an aggravating factor for disciplinary purposes. *See* ABA *Standards* at 9.22(a). He also has substantial experience in the practice of law, another factor in aggravation. *See id.* at 9.22(i). The only mitigating factors found by the board were that Mitchell had a cooperative attitude toward the hearing board, and that Mitchell fully disclosed the facts in the matter. *See id.* at 9.32(e).

Considering the seriousness of the misconduct together with the aggravating and mitigating factors, we conclude that a suspension for a substantial period with the requirement of reinstatement proceedings is necessary. We therefore order that Mitchell be suspended for one year and one day.

### III.

Accordingly, it is hereby ordered that Michael Thomas Mitchell be suspended from the practice of law for one year and one day, effective thirty days after the date on this opinion. It is further ordered that Mitchell pay the costs of this proceeding in the amount of $1,506.37 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, or its successor entity, 600 Seventeenth Street, Suite 300 South, Denver, Colorado 80202–5435. Mitchell shall not be reinstated until he has complied with C.R.C.P. 251.29.