[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 23, 2001
THOMAS K. KAHN
CLERK

_____

No. 99-4094

_____

D. C. Docket No. 97-00660-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee-Cross-Appellant,

versus

BRADLEY FULFORD, LEONARDO GAGE,

Defendants-Appellants-Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(August 23, 2001)**

Before MARCUS, WILSON and MAGILL*, Circuit Judges.

_____
*Honorable Frank J. Magill, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

MAGILL, Circuit Judge:

Appellants Bradley Fulford and Leonardo Gage were convicted of various federal offenses stemming from their participation in a carjacking conspiracy. Fulford and Gage appeal their convictions, and the government cross-appeals, claiming that the district court erred in failing to sentence Gage to life imprisonment under the federal "three strikes" statute, 18 U.S.C. § 3559. We affirm Appellants' convictions, but reverse Gage's sentence and remand for resentencing.

**I.**

On February 18, 1997, Luis Iglesias drove his Chevrolet Blazer to the Miami home of Otto Regalado, where he parked the Blazer in the driveway and began to work on it. Shortly thereafter, Leonardo Gage arrived and directed Regalado to page Bradley Fulford. Fulford returned the page and spoke with Gage, discussing the Blazer and its location. A short while later, Fulford arrived at Regalado's house wearing black jeans, a black sweater, and a ski mask. Fulford pointed a chrome-plated semi-automatic handgun at Iglesias, who was sitting in the driver's seat of the Blazer. Fulford told Iglesias to "[g]et the fuck out of the car." After Iglesias got out of the car and moved to the other side of the street, Fulford drove away in the Blazer.

As Fulford drove off, Iglesias dialed 911. The Metro Dade Police responded and, as a result of their investigation, the Blazer was found later that night parked in the backyard of Gage's home, a few blocks away from the site of the carjacking. Fulford and Gage were arrested and questioned by the FBI. Both confessed their involvement in the carjacking.

A grand jury in Miami issued a three-count indictment charging Fulford and Gage with various carjacking and firearms violations. The indictment charged Fulford and Gage with conspiracy to carjack a vehicle at gunpoint, conspiracy to carry a firearm in relation to a crime of violence, and conspiracy to obstruct a criminal investigation, all in violation of 18 U.S.C. § 371. In addition to the conspiracy offenses, the indictment charged Fulford and Gage with carjacking, in violation of 18 U.S.C. § 2119, and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

Prior to trial, the government filed an Information notifying Gage that if convicted, he faced mandatory life imprisonment under § 3559. Fulford and Gage were tried jointly. At that trial, Fulford took the stand and admitted that he had stolen the Blazer from Iglesias at gunpoint. The jury returned a guilty verdict against Fulford on all counts, and against Gage on the conspiracy count. The district court sentenced Fulford to 138 months imprisonment and Gage to 60 months imprisonment. Fulford and Gage raise numerous issues on appeal

concerning their convictions and sentences. The government cross-appeals the district court's failure to sentence Gage to life imprisonment under the federal "three strikes" statute, § 3559.

## II.

### A. Sufficiency of the Evidence

Fulford contends that the evidence presented at trial was insufficient to satisfy the specific intent requirement of the federal carjacking statute, § 2119. We review this contention de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. See United States v. Trujillo, 146 F.3d 838, 845 (11th Cir. 1998).

To constitute carjacking under § 2119, the taking of a motor vehicle must be committed with the "intent to cause death or serious bodily harm." 18 U.S.C. § 2119. The intent requirement of § 2119 is satisfied where the government "proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." Holloway v. United States, 526 U.S. 1, 12 (1999). The defendant's intent "'is to be judged objectively from the visible conduct of the actor and what one in the position of the victim might reasonably conclude.'" United States v. Guilbert, 692 F.2d 1340, 1344 (11th Cir. 1982) (citation omitted).

In this case, Fulford put a gun to Iglesias's face and told him to "[g]et the fuck out of the car." Iglesias testified that he feared for his life, and Fulford testified that he had been previously convicted of armed robbery. This evidence is sufficient for a reasonable jury to conclude that Fulford had the conditional intent to kill or seriously harm Iglesias if necessary to steal the Blazer.

**B.     Bruton**

Fulford asserts for the first time on appeal that the district court erred in admitting evidence of two taped conversations between his co-defendant, Gage, and an informant, discussing Fulford's involvement in the theft of the Blazer. As a result of Fulford's failure to raise this claim before the district court, we review the district court's decision for plain error. See United States v. Brazel, 102 F.3d 1120, 1141 (11th Cir. 1997). To meet the plain error standard, Fulford must show that: (1) the trial court erred; (2) the error was plain, clear, or obvious; and (3) the error affected his substantial rights. See id. Here, even assuming that the first two elements of the plain error standard are met, Fulford has failed to show that the trial court's error affected his substantial rights.

Fulford asserts that the taped conversations between Gage and the informant constituted facially incriminating statements of a nontestifying co-defendant and, thus, that their admission constitutes a violation of his Sixth Amendment rights under Bruton v. United States, 391 U.S. 123 (1968). At trial, Fulford took the

stand in his own defense and admitted his participation in the theft.  Therefore, even if the challenged statements showed that Fulford was involved in the theft of Iglesias's vehicle, their admission provided the jury with no additional evidence incriminating Fulford.  Accordingly, admission of the challenged tapes did not affect Fulford's substantial rights, and thus the district court did not commit plain error in admitting them.

**C.    Jury Instructions**

Fulford and Gage challenge various jury instructions given by the district court, as well as the court's failure to give other requested instructions.  Our review of a trial court's jury instructions is limited; if the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instruction.  Trujillo, 146 F.3d at 846.  Under this standard, "'we examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled.'"  Carter v. DecisionOne Corp., 122 F.3d 997, 1005 (11th Cir. 1997) (citation omitted).  "We will reverse the district court because of an erroneous instruction only if we are 'left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'"  Id. (quoting Johnson v. Bryant, 671 F.2d 1276, 1280 (11th Cir. 1982)).

"We review a district court's refusal to give a requested jury instruction for abuse of discretion." United States v. Condon, 132 F.3d 653, 656 (11th Cir. 1998). We will find reversible error in the refusal to give a requested instruction only if: (1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense. United States v. Martinez, 83 F.3d 371, 376 (11th Cir. 1996).

## 1. Intent Instruction

Fulford asserts that the district court erred in refusing to give his proposed instruction on the intent required for carjacking under § 2119. Fulford's requested intent instruction stated: "Evidence that the defendant used a gun to frighten the victim is not sufficient in and of itself to prove intent to harm." The district court gave the following instruction on the requisite intent for carjacking:

> The defendant can be found guilty only if . . . the defendant intended to cause death or serious bodily harm when the defendant took the motor vehicle.

> Whether the defendant 'intended to cause death or serious bodily harm' is to be judged objectively from the conduct of the defendant as disclosed by all the evidence in the case and from what one in the position of the alleged victim might reasonably conclude. If, after considering all of the evidence and what one in the position of the alleged victim might reasonably conclude, you find beyond a reasonable doubt that the defendant intended to cause death or serious bodily injury in the event that Luis Iglesias failed to relinquish control of his automobile, this is a sufficient basis for finding that the

government has proved the fourth element of the offense, specifically that the defendant intended to cause death or serious bodily injury.

The district court's instruction directly addressed the subject of the requested instruction, i.e., Fulford's intent, and correctly directed the jury to judge his intent objectively from his conduct as disclosed by all the evidence in the case, and from what one in the position of the victim might reasonably conclude. Furthermore, the court's failure to give the requested instruction in no way impaired Fulford's ability to argue to the jury that his conduct indicated that he intended to frighten Iglesias, not that he intended to cause death or serious bodily injury. Fulford testified at trial that the gun he pointed at Iglesias was a BB gun, though he had indicated to the FBI that he had used a real gun. The district court instructed the jury to evaluate the credibility of Fulford's testimony "in the same way as that of any other witness." In closing, Fulford's counsel argued, on the basis of Iglesias's testimony, that Fulford's objective conduct did not indicate an intent to cause serious bodily harm or death.

We conclude that the district court's actual charge to the jury substantially covered Fulford's requested intent instruction and did not substantially impair his ability to present an effective defense. Therefore, the district court did not abuse its discretion by refusing to give Fulford's proposed instruction.

### 2. Conspiracy Instruction

Gage challenges the district court's instruction on the conspiracy count. Specifically, he contends that the instruction impermissibly allowed the jury to convict him of either conspiracy to carjack or conspiracy to violate § 924(c). Because Gage failed to object to the instruction below, we review the instruction for plain error.  See Brazel, 102 F.3d at 1140.  This court previously has held that where an indictment alleges a conspiracy to commit several offenses, the charge is sustained by proof of conspiracy to commit any one of the offenses.  United States v. Ross, 131 F.3d 970, 984 (11th Cir. 1997).  Therefore, the jury properly could have convicted Gage of either conspiracy to carjack or conspiracy to violate § 924(c).  Accordingly, the district court did not err in so instructing the jury.

### 3.    Supplemental Instruction

Gage next asserts that the district court gave an erroneous supplemental instruction in response to a jury question.  During deliberation, the jury asked the court whether the word "before," in an instruction explaining the conspiracy charge, meant "before the incident or any time prior to the arrest, including after the incident."  The court read the question into the record and engaged in a lengthy colloquy with the parties.  At the end of that colloquy, the court read its proposed instruction, which stated:

> You  must be able to find beyond a reasonable doubt that the
> defendant joined the conspiracy before the carjacking was completed.
> It is up to you, from your consideration of all the evidence, both

before and after the incident, to decide when the carjacking was completed and who became a member of the conspiracy to carjack the car.

Gage's attorney responded:

Judge, for the record, in light of the Court's consideration of the issue Mr. Black brought up, the instruction is acceptable to us. It's still our point of view that as a matter of law the carjacking ends - that you can't join the conspiracy once the car is actually taken.

The court then suggested that the parties research the question of when a carjacking ends, so that they would have an answer in the event that the jury asked for further clarification of the supplemental instruction. Based on the parties' research, Gage requested an instruction that the carjacking was completed no later than the completion of flight from the robbery. The court refused to give this instruction because there was no flight in this case and because the jury was continuing to deliberate and had not asked for further clarification.

Gage now contends that the district court's supplemental instruction was erroneous and that when the conspiracy ended was a question of law rather than a question of fact for the jury. However, it is clear from the record that at the time the instruction was given, Gage had indicated that it was acceptable to him. "It is 'a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.'" Ross, 131 F.3d at 988 (citation

omitted). Accordingly, having agreed to the court's proposed instruction, Gage appears to have waived his right to challenge that instruction on appeal.

Gage attempts to argue that his acceptance of the court's instruction did not render it invited error because his counsel later requested an additional instruction based on subsequent research. Gage's argument is without merit. The record is clear that immediately before the court gave the instruction to the jury, Gage's counsel stated "the instruction is acceptable to us." Gage's attempt, some five hours later, to submit an additional instruction to the jury has no bearing on his earlier unconditional acceptance of the court's instruction. Furthermore, we note that Gage does not appeal the district court's refusal to give his additional proposed instruction. Accordingly, because we find that the district court relied upon Gage's explicit acceptance of its proposed instruction in submitting that instruction to the jury, we conclude that Gage has waived his right to appeal that instruction. Because we hold that Gage invited the district court's supplemental instruction, we need not reach his contention that the instruction constituted plain error.

**D. Three Strikes**

The government cross-appeals, contending that the district court erred in failing to sentence Gage to life imprisonment under the federal "three strikes" statute, § 3559. We review the application of law to sentencing issues de novo. United States v. Manella, 86 F.3d 201, 203 (11th Cir. 1996).

Prior to trial, the government served Gage with an Information, notifying him that upon conviction he faced a mandatory life sentence under § 3559, based on two prior serious violent felony convictions in Florida courts. One of these convictions was for aggravated assault. However, at sentencing, the district court concluded that it could not look beyond the judgment in the aggravated assault case to determine whether the Florida conviction constituted a serious violent felony for purposes of § 3559. As a result, the court declined to impose a mandatory life sentence.

The government asserts that in determining whether Gage's prior conviction qualified as a serious violent felony, the court was required to consider not only the judgment of conviction, but also the underlying aggravated assault Information. The government further argues that because the Information reveals that Gage committed assault with a firearm, the offense qualifies as a "strike" under § 3559. Thus, the central inquiry is whether § 3559 allowed the district court to consider the Florida Information in determining if that conviction qualifies as a serious violent felony. Section 3559 states, in pertinent part:

> Notwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if . . . the person has been convicted . . . on separate prior occasions in a court of the United States or of a State of . . . 2 or more serious violent felonies.

18 U.S.C. § 3559(c)(1)(A)(i). Section 3559 defines "serious violent felony," as

related to Gage's conviction for aggravated assualt, as "a Federal or State offense, by whatever designation and wherever committed, consisting of . . . firearms use." 18 U.S.C. § 3559(c)(2)(F)(i). The phrase "firearms use" is defined in § 3559 as

> an offense that has as its elements those described in section 924(c) . . . if the firearm was brandished, discharged, or otherwise used as a weapon and the crime of violence . . . during and relation to which the firearm was used was subject to prosecution in a court of the United States or a court of a State, or both.

18 U.S.C. § 3559(c)(2)(D).

Whether a crime qualifies as a "serious violent felony" ordinarily is determined by looking to the statutory definition of the crime in question, rather than to the evidence presented to prove that crime. United States v. Kennedy, 133 F.3d 53, 56 (D.C. Cir. 1998). In the context of § 924(e), the Supreme Court has held that in evaluating prior convictions for enhancement purposes, the trial court generally is required to look only to the fact of conviction and the statutory definition of the prior offense. Taylor v. United States, 495 U.S. 575, 602 (1990). However, the Taylor Court went on to suggest that this categorical approach "may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases. . . ." Id. Specifically, the Court held that in a burglary case where the state burglary statute encompassed some offenses that would satisfy the enhancement statute and others that would not, the court could look at the charging paper and jury instructions to determine if the defendant was actually convicted of

an offense satisfying the enhancement statute. Id.

This court discussed the Taylor approach in a case involving sentencing enhancement under U.S.S.G. § 4B1.2. United States v. Spell, 44 F.3d 936 (11th Cir. 1995). Although observing that the Sentencing Guidelines explicitly reject the categorical approach embraced in Taylor, the court recognized that even under the Guidelines approach, "the ability to 'look behind' state convictions in a federal sentencing proceeding is very limited." Id. at 939. However, consistent with Taylor, the court held that "a district court . . . may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself," and that in doing so, "[t]he inquiry is limited to examining easily produced and evaluated court documents, including the judgment of conviction, charging papers . . . ." Id.

Though none of the cases cited by either party directly addresses the analysis of prior convictions under § 3559, there is no compelling reason to read the "three strikes" provision differently than other federal sentence enhancement statutes. Accordingly, under Taylor and Spell, the district court could have looked to the indictment if there was an ambiguity in the judgment. Here, as in Taylor, the state statute under which Gage was charged encompassed some offenses that would satisfy the enhancement statute, and others that would not. Specifically, Fla. Stat. Ann. § 784.021 defines aggravated assault, in pertinent part, as "an assault . . .

[w]ith a deadly weapon without intent to kill."  Fla. Stat. Ann. § 784.021(1)(a) (West 2000).  Under Florida law, a firearm is a deadly weapon, which is defined as a weapon likely to produce death or great bodily harm.  Dey v. State, 182 So.2d 266, 268 (Fla. 2d DCA 1966).  Under § 3559(c)(2)(F)(i), firearms use is a serious violent felony that may be used as a predicate conviction in imposing a life sentence.  The term "firearms use" is defined in § 3559(c)(2)(D) as "an offense that has as its elements those described in section 924(c) . . . if the firearm was brandished, discharged, or otherwise used as a weapon . . . ."  18 U.S.C. § 3559(c)(2)(D).

Accordingly, under the Florida statute, some aggravated assaults would satisfy the definition of "firearms use" under § 3559(c)(2)(D), while others, involving deadly weapons other than firearms, would not.  As in Taylor, this ambiguity permits the sentencing court to look at the charging paper to determine if the defendant was actually convicted of an offense satisfying the enhancement statute.  In this case, the Information to which Gage pled nolo contendere charged that he "did unlawfully, feloniously and intentionally threaten by word or act to do violence to the person of another . . . coupled with an apparent ability to do so and did some act, to wit: Pointed a firearm at or in the direction of [the victim] and/or shot at or in the direction of [the victim]."   As this Information confirms that Gage's earlier conviction was for a crime that would satisfy the definition of

"firearms use" under § 3559(c)(2)(D), he is subject to a mandatory sentence of life imprisonment under § 3559(c)(1). Therefore, because the district court erred in concluding that it could not consider the Florida Information in determining whether Gage's prior aggravated assault conviction qualifies as a "serious violent felony" under § 3559, we reverse Gage's sentence.

## IV.

Based upon the foregoing, we AFFIRM the convictions of Fulford and Gage. However, we REVERSE Gage's sentence and REMAND for resentencing under the federal "three strikes" statute, § 3559.