[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16340

_____

D.C. Docket No. 0:12-cr-60066-WPD-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENNIS ROMERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 28, 2013)

Before CARNES, Chief Judge, WILSON and FAY, Circuit Judges.

PER CURIAM:

Dennis Romero was sentenced to 45 months imprisonment after a jury found

him guilty of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349,

and two counts of wire fraud relating to his collection of unemployment compensation benefits, in violation of 18 U.S.C. § 1343.  He appeals his conspiracy conviction on three grounds, contending that:  (1) the district court erred in refusing to give a requested jury instruction on good-faith reliance on the advice of counsel; (2) his conviction for conspiracy to commit mail fraud is inconsistent with the jury's verdict of acquittal on two counts of fraud involving aircraft parts, in violation of 18 U.S.C. § 38; and (3) the evidence presented at trial was insufficient to sustain his conspiracy conviction.

## I.

### A.

The various fraud charges against Romero stemmed from his employment with Aircraft Transparencies Repair Inc. (ATR), a company founded by Rangel Fernandez to repair and overhaul airplane cockpit windows.  ATR, which obtained a required repair station certificate from the Federal Aviation Administration in May of 1999, worked closely with an affiliated aviation parts broker, Transparencies Engineering Group Inc. (TEG), which was also founded by Fernandez and located less than a block from ATR's premises in Hialeah, Florida. TEG purchased aircraft windows in "as-removed" condition, sent them to ATR to be repaired into "overhauled" condition in accordance with FAA procedures, and then sold them to commercial airlines and other consumers.  A window in

2

"overhauled" condition is deemed ready for return to service and to be installed in an aircraft.

As a certified repair station, ATR was required to prepare certain paperwork documenting all maintenance functions performed on aircraft windows, including work orders and maintenance release forms, also known as FAA Form 8130, which it would then transmit to the final customer. When a window arrived at ATR, a sequentially numbered work order listing the part number, serial number, and date of receipt would be generated using an aviation software program, ILS Optimizer. The work order traveled with the window as it proceeded through the repair station, with ATR's mechanics and production manager signing off on each repair. Romero was ATR's production manager and, in that capacity, was responsible for delegating work assignments to mechanics, supervising and inspecting their repair work, and then approving that work by signing off on the relevant work order. Fernandez would then complete a maintenance release form — FAA Form 8130 — certifying that the window was in the condition listed and ready for return to service.

ATR's repair station certificate was revoked by the FAA on July 7, 2009, after a customer complained that it had falsely certified the airworthiness of an airplane window. Fernandez hired an attorney to appeal the revocation to the National Transportation Safety Board (NTSB) and, following a hearing on July 30,

3

2009, an administrative judge upheld the revocation of ATR's license. Fernandez held a staff meeting after the NTSB appeal, notifying his employees that ATR could not continue to operate without an FAA certificate and sending them home. Within a few days, however, Fernandez devised a scheme to backdate work orders and maintenance release forms so that ATR could continue to perform repair work despite the revocation of its license. Fernandez summoned a skeleton crew of mechanics, consisting of Romero, Saul Hernandez, and Hermes Reyes, and told those employees that ATR was trying to get its FAA certification back, that he had consulted with counsel, and that ATR could repair aircraft windows that it had received before its license had been revoked. Romero agreed to come back to work.

To avoid arousing suspicion that ATR was continuing to operate without FAA certification, Fernandez moved the repair shop upstairs to the company's second floor, implemented a night shift for the repair work, and instructed his employees to park down the road at TEG and to apply for unemployment compensation benefits. Romero, as instructed, applied for and collected unemployment while continuing to work at ATR, falsely certifying that he had been permanently laid off by ATR and was unemployed. Fernandez also instructed one of his employees, Gregorio Piscoyo, to make sure that all work

4

orders were backdated to a time before ATR had its certification revoked and to inform the other employees about the backdating scheme.

In March 2010, approximately seven months after ATR had resumed its repair operations, FAA safety inspectors contacted Special Agent Timothy Arnold of the United States Department of Transportation and informed him that they believed that ATR was continuing to overhaul airplane windows despite losing its certification. Agent Arnold launched an investigation and eventually obtained search warrants for ATR and TEG, which were simultaneously executed in August 2010. Those searches uncovered documents showing that the sister companies had backdated work orders and maintenance release forms associated with three cockpit windows that, in actuality, had been received, repaired, and sold to commercial airlines after the revocation of ATR's certification. Romero had supervised and approved the repairs on all three windows by signing off on the backdated work orders. Fernandez then signed the relevant maintenance release forms, which falsely certified that the windows had been overhauled before the revocation of ATR's license.

Romero was later arrested for his involvement in ATR's continued operations and interviewed by Agent Arnold. According to Agent Arnold's later testimony at trial, Romero admitted during that interview that he was aware that ATR's certification had been revoked on July 30, 2009, but nevertheless continued

5

to approve repairs on work orders that had been backdated by other employees. Romero also admitted that the repair work had been carried out on the second floor of ATR's building in order to conceal that work from the FAA, and that he had fraudulently collected unemployment benefits.

B.

Romero, along with fifteen codefendants, was charged in a 21-count indictment with one count of conspiring to commit mail fraud (Count 1), two substantive counts of fraud involving aircraft parts (Counts 3 and 4), and two counts of wire fraud relating to his collection of unemployment compensation (Counts 5 and 6). Count 1 alleged that Romero and eleven of his codefendants conspired to defraud commercial aviation customers by falsely certifying "the airworthiness of aircraft cockpit windows" in various backdated documents despite "knowing that they were not authorized [to make such certifications] by the FAA." In its description of the manner and means of the charged conspiracy, the indictment more specifically alleged that Romero "generated work assignments to ATR mechanics . . . and thereafter supervised and approved back dated work orders" with knowledge that ATR's certification had been revoked. Counts 3 and 4, the substantive counts for fraud involving aircraft parts, alleged that Romero "knowingly and with the intent to defraud" made materially false representations

6

when he approved repair work on two of the three backdated work orders that federal agents had uncovered.

Romero was tried along with four of his codefendants; the remaining defendants, including Fernandez, pleaded guilty to various charges before the start of trial. Romero unsuccessfully moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the government's case and again at the close of all of the evidence. Romero also requested a jury instruction on good-faith reliance on the advice of counsel based on Fernandez's representations that he had consulted with an attorney and that ATR could continue to repair windows that it had in stock before the revocation of its FAA certification. The district court declined to give the requested instruction, noting that Romero did not personally consult with an attorney, that there was no evidence that Fernandez's attorney had been fully apprised of all material facts, and that Romero's asserted reliance on Fernandez's representations was adequately covered by the general good-faith instruction that it had already approved. The court later gave that general good-faith instruction, telling the jury that "'[g]ood faith' is a complete defense to a charge that requires an intent to defraud" and that an "honestly held opinion or an honestly formed belief cannot be fraudulent intent, even if the opinion or belief is mistaken." The jury ultimately found Romero guilty on Counts 1, 5, and 6, but

7

acquitted him of the two counts of fraud involving aircraft parts charged in Counts 3 and 4.

## II.

Romero contends that the district court erred in refusing to instruct the jury on the defense of good-faith reliance on the advice of counsel.  Although he acknowledges that he did not personally retain and consult with an attorney, Romero asserts that "he was brought into the loop by Rangel Fernandez," that Fernandez apprised his own attorney of all relevant facts "regarding ATR's license issue," and that Fernandez later informed him that ATR could continue performing repair work on aircraft windows that it received before the revocation of its FAA certification.

We review a district court's refusal to give a requested jury instruction for an abuse of discretion.  United States v. Hill, 643 F.3d 807, 850 (11th Cir. 2011).  To merit an instruction on good-faith reliance on the advice of counsel, "a defendant must show that (1) he fully disclosed to his attorney all material facts that are relevant to the advice for which he consulted the attorney; and (2) thereafter, he relied in good faith on advice given by his attorney."  Id. at 851.  A district court may properly decline to give such an instruction "if it lacks evidentiary support or is based upon mere suspicion or speculation."  United States v. Condon, 132 F.3d 653, 656 (11th Cir. 1998) (quotation marks omitted).  In addition, we will not

reverse a district court's refusal to give a jury instruction unless "(1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." Hill, 643 F.3d at 850.

Romero has not shown that the district court abused its discretion in refusing to give the requested jury instruction on good-faith reliance on the advice of counsel. He has not pointed to any legal authority to support the proposition that such an instruction is warranted where, as here, a defendant allegedly relies on a third party's consultation with counsel. Indeed, existing caselaw undermines any such suggestion. See e.g., Condon, 132 F.3d at 656 ("To be entitled to a good-faith reliance instruction, a defendant must show that (1) he fully disclosed all material facts to his attorney; and (2) he relied in good faith on advice given by his attorney.") (emphasis added); United States v. Durnin, 632 F.2d 1297, 1301 (5th Cir. 1980) (holding that a defendant was not entitled to a good-faith reliance instruction where there was "no evidence in the record that he either sought the advice of counsel, personally received advice after full disclosure, or followed the advice in good faith").[1]

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

9

In any event, it is also unclear from the evidence in the record whether Fernandez fully disclosed all material facts to his attorney about the course of conduct that he elected to follow after the revocation of ATR's certification.  And even if he had, the district court gave a general good-faith instruction, which notified the jury that an honestly held opinion or belief precludes a finding of fraudulent intent.  That instruction substantially covered Romero's defense that he relied on Fernandez's assurance that his attorney said that ATR could continue to work on airplane windows that it had in stock before the revocation of its license.  Accordingly, even if there were a sufficient evidentiary foundation to warrant an instruction on good-faith reliance on the advice of counsel, there would still be no basis for reversing the district court's refusal to give one.  See Hill, 643 F.3d at 850.

## III.

Romero next contends that the jury's verdict of acquittal on the two counts of fraud involving aircraft parts, as charged in Counts 3 and 4, is inconsistent with (and thus requires reversal of) his conviction for conspiracy to commit mail fraud. While Romero concedes that inconsistent jury verdicts are generally permissible, he insists that reversal is required in the case of "truly inconsistent verdicts on legally interlocking charges where acquittal on one count negates a necessary element for conviction on another count."  In Romero's estimation, his acquittal on

Counts 3 and 4 of the indictment, which alleged that he knowingly signed two specific work orders that had been backdated, negates an essential element of his conspiracy conviction.

Romero's challenge fails for the simple reason that, even assuming that the jury's verdicts on Counts 1, 3, and 4 of the indictment were truly inconsistent, the United States Supreme Court has made clear that a defendant cannot challenge a conviction on the ground that it is inconsistent with a verdict of acquittal on another count. See United States v. Powell, 469 U.S. 57, 69, 105 S.Ct. 471, 479 (1984) (holding that "there is no reason to vacate [a] conviction merely because the verdicts cannot be rationally reconciled" and that jury verdicts are "insulate[d] . . . from review" on grounds of inconsistency); Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190 (1932) ("Consistency in the verdict is not necessary."); see also United States v. Mitchell, 146 F.3d 1338, 1344 (11th Cir. 1998) ("The Supreme Court has plainly determined that jury verdicts are 'insulated from review' on the ground that they are inconsistent.") (brackets omitted); United States v. Hope, 901 F.2d 1013, 1020 n.12 (11th Cir. 1990) ("[T]hat a jury reaches what might be construed as inconsistent verdicts is not an adequate ground for reversal."). As the Supreme Court has explained, "where truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real

conclusions, but that does not show that they were not convinced of the defendant's guilt." Powell, 469 U.S. at 64–65, 105 S.Ct. at 476 (quoting Dunn, 284 U.S at 393, 52 S.Ct. at 190). A jury may reach seemingly inconsistent verdicts through "mistake, compromise, or lenity," which often makes it impossible to determine whether the inconsistency favored the defendant or the government. Id. at 65, 105 S.Ct. at 476–77.

## IV.

Finally, Romero challenges the sufficiency of the evidence to support his conviction on Count 1 of the indictment for conspiracy to commit mail fraud. We review de novo the sufficiency of the evidence to support a conviction, viewing the evidence in the light most favorable to the jury's verdict and drawing all reasonable inferences and credibility choices in its favor. United States v. Joseph, 709 F.3d 1082, 1093 (11th Cir. 2013). We must affirm a jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." United States v. Friske, 640 F.3d 1288, 1291 (11th Cir. 2011) (quotation marks omitted).

To sustain a conspiracy conviction, "the government must prove (1) the existence of an agreement to achieve an unlawful objective; (2) the [defendant's] knowing and voluntary participation in the conspiracy; and (3) an overt act in furtherance of the conspiracy." United States v. McQueen, 727 F.3d 1144, 1153

12

(11th Cir. 2013) (quotation marks omitted). The government "need not prove that the defendant knew all of the details or participated in every aspect of the conspiracy," only that the defendant "knew the essential nature of the conspiracy." United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005) (quotation marks and brackets omitted). Whether a defendant "knowingly volunteered to join the conspiracy may be proven by direct or circumstantial evidence, including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." Id. (quotation marks omitted).

Romero's sufficiency challenge centers on the government's purported failure to prove that he "generated work assignments to ATR mechanics and employees," as alleged in the indictment's description of the manner and means of the charged conspiracy. He asserts that the evidence introduced at trial showed that he did not generate work lists or repair orders, which were prepared by other ATR employees.

Even assuming that the government failed to present sufficient evidence to prove that Romero generated work assignments to ATR mechanics, the government "need not prove all facts charged in the indictment as long as it proves other facts charged in the indictment which do satisfy the essential elements of the crime." United States v. England, 480 F.2d 1266, 1269 (5th Cir. 1973); see also United States v. Smith, 231 F.3d 800, 818 n.21 (11th Cir. 2000) ("[W]e have held

13

that the government is not required to prove surplus allegations in an indictment."). In Count 1 of the indictment, the government also alleged that Romero had "supervised and approved back dated work orders" with knowledge that ATR's certification had been revoked and, more generally, that he knowingly participated in the fraudulent scheme to falsely certify "the airworthiness of aircraft cockpit windows." There was ample evidence to prove those allegations, and Romero does not challenge the sufficiency of the evidence showing that he "supervised and approved back dated work orders" or that he knowingly participated in ATR's fraudulent scheme.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial demonstrated that Romero, with knowledge that ATR's certification had been revoked, continued to supervise and approve repairs on work orders that had been backdated. Agent Arnold testified that Romero, during his post-arrest interview, admitted that repair work had been performed on ATR's second floor in order to avoid arousing the FAA's suspicion and that he had approved repairs on backdated work orders. Testimony from Fernandez and ATR's bookkeeper, Francesca Diaz, also showed that employees, including Romero, worked at night, parked their cars away from ATR's premises, and fraudulently applied for unemployment compensation, all in an effort to conceal the fact that ATR was continuing to perform repair work without the required

14

certification.  Although Romero disputed much of the evidence against him in his trial testimony, the jury was entitled to both discredit that testimony and to treat it as substantive evidence of his guilt.  See United States v. Williams, 390 F.3d 1319, 1325–26 (11th Cir. 2004) (explaining that "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true" and may use that testimony "as substantive evidence of the defendant's guilt," particularly where "the elements to be proved for a conviction include highly subjective elements" such as "the defendant's intent or knowledge") (quotation marks omitted).  There was sufficient evidence from which a reasonable jury could not only conclude that Romero "supervised and approved back dated work orders" with knowledge that ATR's certification had been revoked, but that he generally knew the essential nature of ATR's fraudulent scheme and voluntarily chose to participate in it.  See Miranda, 425 F.3d at 959.

**AFFIRMED.**[2]

---

[2] This appeal was originally scheduled for oral argument but was removed from the oral argument calendar by unanimous agreement of the panel under 11th Cir. R. 34-3(f).