**Nain Antoun ZEBOUNI, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15426.**

United States Court of Appeals
Fifth Circuit.

Nov. 9, 1955.

Fred S. Rizk, M. H. Myerson, Jacksonville, Fla., for appellant.

E. Coleman Madsen, Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., Edith House, Asst. U. S. Atty., Jacksonville, for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

Appellant was convicted and sentenced to imprisonment for a year and a day upon a one count indictment, charging him with having knowingly made a false statement under oath in a proceeding relating to naturalization in violation of Title 18 United States Code, § 1015(a).[1]

All of the allegations of the indictment were either conclusively established by the evidence or were admitted by the defendant, excepting only his knowledge of the falsity of the statement and his criminal intent. In his "Application for a Certificate of Arrival and Preliminary

---

1. "§ 1015. *Naturalization, citizenship or alien registry*

"(a) Whoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens; or

\*  \*  \*  \*  \*  \*  \*

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Form for Petition for Naturalization", the defendant was duly sworn and made the following answer under oath:

"(24) Have you, either in the United States or in any other country, been arrested, charged with violation of any law or ordinance, summoned into court as a defendant, convicted, fined, imprisoned, or placed on probation or parole, or forfeited collateral for any act involving a felony, misdemeanor, or breach of any public law or ordinance? If so, give date, place, offense, and disposition. ....no........."

That negative answer was false, for on February 1, 1951, defendant had been arrested, charged with "possession of lottery paraphernalia bond books", and on the next day, had been found guilty of the charge by a judge of the Municipal Court of the City of Jacksonville, and fined $10.00; and, again on February 14, 1951, the defendant had been arrested, charged with "possession of lottery paraphernalia", but found not guilty by a different judge of the same Court.[2]

In his testimony, the defendant explained the negative answer to the question as follows:

"A. The question was asked, but I explained at the time that the question as put altogether, was awkward to me—The only thing came to my mind was, have you been in jail, and I have never, and I learned in the Syrian or Arabic language, it says, have you been incarcerated, because I never speak in English. Sometimes I have to translate into Arabic for this, have you ever been in jail, and that's what came to my mind. If I ever been in jail, I never was in jail; for that reason I answer that question 'no'. * * *

"A. I understood by the question that I had been put in jail or not, and I know that I never been put in jail and for that reason I said no."

Thus the sole issue was whether the defendant had the requisite criminal intent and knowledge of the falsity of his answer.

Appellant strenuously urges that, by excessive participation in the trial, by continuous intervention on behalf of the prosecution, by cross-examination of defendant with a hostile attitude, and by remarks evidencing disbelief of the defensive testimony, the district judge inadvertently abused his discretionary right to participate in the trial and created such prejudice with the jury against the defendant as to require reversal.[3]

On one occasion when defendant's counsel objected that the Naturalization Examiner was not shown to have authority to administer oaths, the district judge retorted, " * * * I think it's foolish to go into something like that", and again, " * * * I think it is foolish to waste any time finding out if he was a Naturalization Examiner or not." True, shortly thereafter, the court instructed the jury: "I instruct you to disregard this colloquy between me and Mr. Myerson about what I thought about the point of law he is raising." In the minds of the jury, however, it is probably true that the remarks of the judge had already discredited counsel for the defendant with consequent prejudice to the defense. If counsel had had the temerity to characterize any action of the judge as foolish, he would, no doubt, have met instant punishment for contempt. In the administration of justice, the function of counsel is almost, if not quite, as essential and important as is that of the judge, and counsel, in the proper performance of his duty, is entitled to the courtesy and respect of the court.

On another occasion, defendant's counsel sought to introduce part of an inter-

---

2. There was considerable evidence both ways as to whether defendant was actually guilty of either of said offenses. Since, however, that was not the issue upon this charge, we forego any discussion of that evidence.

3. See Blumberg v. United States, 5 Cir., 222 F.2d 496; Hunter v. United States, 5 Cir., 62 F.2d 217; Adler v. United States, 5 Cir., 182 F. 464.

view with another Naturalization Examiner to show that before the present charge was brought against defendant, or he had any intimation thereof, he had corrected his earlier false statement, this as bearing upon defendant's original intent, for which purpose we think it was admissible.[4] The judge characterized this offer as an attempt to get a self-serving statement before the jury, though he later permitted the *Government*[5] to introduce the entire interview and correctly instructed the jury as to its purpose in his oral charge.

In fairness to the able district judge, we must say that, while the record discloses some irritation and impatience on his part, it further shows a conscientious endeavor to be fair to both sides, including a reminder to defendant's counsel at the close of all the evidence to renew his motion for judgment of acquittal and a full and fair charge to the jury. While we thus recognize the force of the appellant's argument on this ground, a careful reading of the record as a whole leaves us reluctant to hold that, prior to the close of the evidence, the district judge had so abused his discretion as to necessitate reversal.

Upon his own motion, the district judge interrupted counsel for the defendant in his closing argument to the jury and the colloquy set forth in the margin[6] ensued. It is true that the statute, footnote 1, supra, uses the word "knowingly" and fails to use the word "willfully". It has, however, been heretofore treated as including the element of willfulness.[7] Indeed, in the perjury statute the word "willfully" was held to be used in the sense of "knowingly" or "intentionally".[8] The two words "knowingly" and "willfully" are often used as equivalents.[9] Certainly, the mere omission of the word "willfully" is not to be construed as eliminating the element of criminal intent from the crime. Cf. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. Courts have seen fit to throw up unusual safeguards against erroneous convictions for perjury.[10] Like considerations lead us to believe that the standards of guilt of criminal offenses should not be relaxed in charges under this statute comparable to the crime of perjury. In so interrupting the closing argument for the defendant and stating that "willful is not an element of the offense as denounced by the

4. See United States v. Norris, 300 U.S. 564, 576, 57 S.Ct. 535, 81 L.Ed. 808; Llanos-Senarillos v. United States, 9 Cir., 177 F.2d 164, 165.

5. The interview included references to two later arrests of the defendant which he and his wife undertook to explain, but which bore no relevance to the crime for which he was being tried. The Government's purpose in introducing the interview was a thoroughly reprehensible effort to prejudice the jury. As brazenly stated by the Assistant United States Attorney to the district judge, "We had our purpose in letting him go into it. We wanted to get these other arrests in."

6. "Thereupon closing argument on behalf of the defendant was submitted to the jury by Mr. Myerson, during the course of which the following transpired.
"Mr. Myerson: —He is charged with making a false statement. Wilfully. With a bad heart. Evil intent—.
"The Court: The charge is knowingly making a false statement. Making it with the knowledge it was false.
"Mr. Myerson: I understood in that

charge you said you were going to give it in there.
"The Court: The element of wilful doesn't include bad heart and corrupt motive.
"Mr. Myerson: I was quoting my definition of what wilful was.
"The Court: Wilful is not an element of the offense as denounced by the statute. You see?
"Thereupon Mr. Myerson concluded his closing argument on behalf of the defendant, to the jury."

7. Holmgren v. United States, 9 Cir., 156 F. 439, 444, affirmed 217 U.S. 509, 30 S. Ct. 588, 54 L.Ed. 861.

8. Maragon v. United States, 87 U.S.App.D. C. 349, 187 F.2d 79, 80.

9. See McBride v. United States, 5 Cir., 225 F.2d 249, 253, 254; 23 Words and Phrases, p. 572 et seq.; 45 Words and Phrases, p. 213 et seq.

10. See United States v. Otto, 2 Cir., 54 F.2d 277, 279; McWhorter v. United States, 5 Cir., 193 F.2d 982, 983, and cases there cited.

statute", the district judge was sticking to the letter of the statute but was departing from its spirit to such an extent, we think, as may have deprived the defendant of his constitutional right to the effective assistance of counsel on a matter going to the gist of his defense.

Upon the entire record we are unwilling to hold that the defendant was given that fair and impartial trial, free from error of law, which is necessary to sustain his conviction and imprisonment. The judgment is, therefore, reversed and the cause remanded for a new trial.

Reversed and remanded.