**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Vestol Vernon RAMSEY, Defendant-Appellant.**

**No. 73-2484.**

United States Court of Appeals,
Fifth Circuit.

May 2, 1974.

Rehearing and Rehearing En Banc
Denied June 12, 1974.

Richard Haynes, W. James Kronzer, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., George A. Kelt, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., Victor D. Stone, Jerome Feit, Justice Dept., Crim. Div., Appellate Sec., Washington, D. C., for plaintiff-appellee.

Before RIVES, WISDOM and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Ramsey was indicted by a federal grand jury for (1) using the mail to carry on an illegal activity (bribery), in violation of the Travel Act; (2) devising a scheme to defraud and for the purpose of executing it, violating the Federal Mail Fraud Statute; and (3) conspiring to violate both the Travel Act and the Mail Fraud Statute.[1] He was found guilty under all counts. We affirm.

Ramsey, a county commissioner in Harris County, Texas, was responsible for supervising the county voting machine department. At trial the government introduced evidence tending to prove that Ramsey obtained kickbacks from the Shoup Voting Machine Company in the following manner: Ramsey recommended to Shoup that they retain an attorney, Chandler, to act as Shoup's lobbyist in Harris County. Ramsey had Chandler send Shoup bills for fictious services. Shoup, the government contends, paid the bills, feeling that pleasing Ramsey was important to continuation of its approximately $200,000 a year business with the county. The payoffs were accomplished in the following manner: Ramsey would ask Chandler to send a bill to Shoup's representative in Tennessee. That representative would then forward the request for payment to Pennsylvania, where a check would be issued and sent to Chandler. When the check arrived, Chandler would cash it and Ramsey would take the cash.

Ramsey, on appeal, has presented nine issues for review.[2] We find that only one issue need be discussed by the court, the others being without merit.

Ramsey urges that the trial court persistently made unfair, improper and repressive remarks to the defense attorney which prejudiced Ramsey's case before the jury. The passages cited by Ramsey from the trial record, however, do not support these allegations. Furthermore, this court, after having carefully reviewed the entire record, finds no conduct by the trial court which, when considered separately or in the context of the entire trial, could have affected the jury's verdict.

---

1. (1) 18 U.S.C. § 1952 states in part, "Whoever . . . uses any facility in interstate . . . commerce, including the mail, with intent to . . . otherwise carry on . . . any unlawful activity . . . shall be fined . . . or imprisoned . . . or both."
See, Article 159, Title 5, Vernon's Penal Code of the State of Texas Annotated.
(2) 18 U.S.C. § 1341.
(3) 18 U.S.C. § 371.

2. The issues Ramsey presented were these: 1) Was the evidence sufficient to prove a violation of the Travel Act; 2) Was the evidence sufficient to prove bribery under Article 159 of the Texas Penal Code; 3) Was the evidence sufficient as to whether Ramsey "knowingly caused use of the mails to perpetrate a scheme to defraud the taxpayers of Harris County in violation of 18 U.S. C. § 1341;" 4) Was the evidence sufficient to prove a conspiracy between Ramsey, Chandler, Shoup Voting Machine Corporation, and Schote, an officer of Shoup; 5) Were the remarks and rulings by the trial judge improper; 6) Were the limitations on the examination of witness Chandler and witness Slaughter by the court improper; 7) Did the trial court erroneously quash a subpoena to Chandler; 8) Did the trial court properly instruct the jury, and 9) Did the court properly refuse Ramsey's requested instructions concerning the Mail Fraud Statute.

Of the 12 instances where appellant urges prejudicial remarks were made, 11 were rulings on government objections to defense counsel's overly long, repetitious and irrelevant questions, and *in all 11 instances the court ruled in favor of appellant Ramsey*. The only inquiry not part of a ruling was the trial judge asking how much longer it would be until the relevance of a certain line of questioning would become apparent, as the witness had been on the stand for over an hour. When defense counsel assured the judge he would tie it together eventually, he was allowed to continue.[3]

Ramsey indicates that the most severe of the alleged prejudicial remarks was a reply by the trial court to an objection made by the government, ". . . The defense attorney has a right to be repetitive. He has a right to try to trick this witness." In Zebouni v. United States, 226 F.2d 826 (5th Cir. 1955), cited by Ramsey, the trial court referred to a defense tactic as *"foolish,"* and characterized an attempt to put a certain statement into the record as *"self-serving."* Yet, that was not enough to necessitate reversal. In this court's opinion, Judge Rives stated:

> In fairness to the able district judge, we must say that, while the record discloses some irritation and impatience on his part . . . a careful reading of the record as a whole leaves us reluctant to hold that, prior to the close of the evidence,[4] the district judge had so abused his discretion as to necessitate reversal. *Id.* at 828. [Footnote ours].

The law of all the circuits is replete[5] with instances where the equally severe remarks of a trial court were held insufficient for reversal. In United States v. Porter, 441 F.2d 1204 (8th Cir. 1971), the trial court admonished defense counsel for "deliberate tactics," and for "blowing smoke rings" to confuse the jury. In United States v. Chikata, 427 F.2d 385 (9th Cir. 1970), the trial court referred to defense counsel's repetitious interrogation as "just ridiculous." In Cooper v. United States, 403 F.2d 71 (10th Cir. 1968), the court responded to a comment by the defense counsel with "that's ridiculous." In United States v. Penner, 425 F.2d 729 (5th Cir. 1970), a case similar to appellant's, this court held:

> Although the isolated portions of the record quoted on brief might indicate an undue interference by the trial judge with the trial, we think that the first contention is refuted by a perusal of the record as a whole. From such examination it is clear that the main purpose of the trial judge's intervention was to assist the jury and to *discourage efforts by defense counsel to explore irrelevant issues* and to make premature jury arguments. The comments of the court were not argumentative and did not indicate his views as to guilt or innocence. [Emphasis added]. *Id.* at 730.

This court, after reviewing the entire record below, finds no single instance nor a totality of action justifying a reversal. Ramsey's conviction in all respects must be

Affirmed.

3. It is not apparent from the record of this case that the defense attorney was able to tie up any of these lines of questioning. The judge's inquiries were apparently well-founded.

4. The added fact that the trial judge, on his own motion, interrupted the defense attorney during his closing argument to the jury caused this court to grant a new trial.

5. See, Walker v. Bishop, 408 F.2d 1378 (8th Cir. 1969); United States v. Caracci, 446 F.2d 173 (5th Cir. 1971); United States v. Carrion, 463 F.2d 704 (9th Cir. 1972); United States v. Cruz, 455 F.2d 184 (2nd Cir. 1972); United States v. Middleton, 458 F.2d 482 (5th Cir. 1972); Duran v. United States, 413 F.2d 596 (9th Cir. 1969).