[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15339
Non-Argument Calendar
_____

D.C. Docket No. 9:18-cr-80086-KAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ETEVALDO FERREIRA DE SOUZA,
a.k.a. Etevaldo Ferreira Souza,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 28, 2020)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and JILL PRYOR, Circuit
Judges.

PER CURIAM:

Etevaldo De Souza appeals his conviction for making a false statement under oath in a matter related to naturalization, in violation of 18 U.S.C. § 1015(a).

I.

De Souza is a native and citizen of Brazil.  He was charged in a two-count indictment with making false statements on his Form N-400 application for naturalization (Count 1) and making false statements during his citizenship interview (Count 2), both in violation of 18 U.S.C. § 1015(a).[1]  Both Counts alleged the same false statements: (1) that De Souza had never been charged with committing a crime or offense, (2) that he had never given any United States official any information that was false, fraudulent, or misleading, and (3) that he had never lied to any Unites States official to gain immigration benefits.  The crux of the government's case was that De Souza had been charged with murder in Brazil and yet had denied ever being charged with any crimes when he later sought immigration benefits in the United States.

The procedural history of De Souza's Brazilian case is not in dispute.  In August 1993 a Brazilian prosecutor filed a document called a "denúncia" accusing De Souza of murder.  The denúncia was signed by a judge on August 10, 1993.  In September 2000, after a preliminary hearing where De Souza was represented by

---

[1] Section 1015(a) makes it a crime for any person to "knowingly make[ ] any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens."

counsel, a judge issued a "pronúncia" authorizing the charge against De Souza to go to trial. But the pronúncia was never served on De Souza, who by that time was living in the United States. (It appears that De Souza was living in the United States as early as 1998, when he obtained a driver's license in Florida.) In April 2013 a Brazilian judge dismissed the charge against De Souza because the statute of limitations had expired.

In 2010 De Souza began seeking immigration benefits in the United States. He filed a request for a replacement I-94, claiming that he had entered the United States on a tourist visa in November 2000 and had later lost his I-94 and his passport.[2] Obtaining a replacement I-94 would have been the first step toward lawful permanent resident status. His request was denied after a search of the relevant government databases found no record of De Souza lawfully entering the country.

In 2012, a year before his Brazilian case was dismissed, De Souza married a United States citizen and applied for a green card. He applied twice; his first application was rejected for reasons not relevant to this appeal, and his second application was approved.[3] On his application forms he stated that he entered the

---

[2] An I-94 is a record showing that a person arrived lawfully in the United States. Generally, a valid I-94 is required to obtain lawful permanent resident status (more commonly known as a green card).

[3] De Souza did not need a valid I-94 to obtain a green card because he met an exception to that general rule.

3

United States without inspection — that is, unlawfully — in November 2000. The forms asked: "Have you EVER, in or outside the United States: . . . Been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?" De Souza answered "No." And at an immigration interview he "claim[ed] no arrests[,] DUI[s,] or other offenses." De Souza signed acknowledgements on his green card applications and before his immigration interview that any false statements he made could subject him to prosecution.

In July 2017 De Souza filed a Form N-400 application for naturalization. The application asked if De Souza had "EVER been charged with committing, attempting to commit, or assisting in committing a crime or offense." It advised him that he "must answer 'Yes' even if [his] records have been sealed, expunged, or otherwise cleared," and that he "must disclose this information even if someone, including a judge, law enforcement officer, or attorney, told [him] that it no longer constitutes a record or told [him] that [he does] not have to disclose the information." De Souza answered "No." The application also asked De Souza: "Have you EVER given any U.S. Government officials any information or documentation that was false, fraudulent, or misleading," and "Have you EVER lied to any U.S. Government officials to gain entry or admission into the United States or to gain immigration benefits while in the United States?" De Souza

4

answered "No" to both questions.  He certified under penalty of perjury that his answers were correct.

After De Souza applied for citizenship, an investigator with the Department of Homeland Security (DHS) looked into his background.  He discovered the denúncia and pronúncia after requesting De Souza's criminal history records from Brazil.  He then told the immigration official who was scheduled to conduct De Souza's citizenship interview that De Souza had been charged with murder in Brazil.

That immigration official decided to record her interview with De Souza and confront him about his Brazilian case.  De Souza was under oath during that interview.  The official started the interview by going over each of the questions in the Form N-400 and verifying with De Souza that his written answers were correct.  Then she asked him some follow-up questions about his criminal history.  He admitted that when he visited Brazil in June 2013 (his first visit after he moved to the United States), he found out there was a "citation" against him.  He said that he went to the courthouse to sort it out and they told him "it's nothing major."  He also mentioned being approached as a witness to a crime at some point, although he did not provide any specifics.  He denied having been charged with any crimes.

Then the immigration official told De Souza that he had been "indicted for murder" in Brazil in September of 2000.  At first De Souza claimed that he did not

5

know about the charge. He said that the Brazilian police had approached him as a possible witness to a murder in the 1990s — even though, according to him, he was in an entirely different city studying at a police academy when the alleged murder happened. He claimed that the police had tried to coerce him into testifying against the perpetrators. Then he changed his story and admitted that he found out about the charge in 2001 or 2002, when his father contacted him to tell him about it. He said that he waited until he received his green card before he went back to Brazil to deal with the charge.

## II.

The United States indicted De Souza in May 2018 for his alleged false statements, and De Souza decided to take the case to trial. Before trial, De Souza requested a foreign law determination under Federal Rule of Criminal Procedure 26.1. He argued that under Brazilian law, a dismissal based on the running of the statute of limitations is better than an acquittal and makes it as though the accused had never been charged at all. That, according to De Souza, meant he could truthfully deny the charge on his Form N-400 and at his citizenship interview.

The district court heard testimony before trial from a Brazilian lawyer about the effect of a denúncia, a pronúncia, and a statute of limitations dismissal under Brazilian law. It also considered translated copies of two decisions from Brazil's Supreme Court that were relevant to the statute of limitations question. The court

6

ruled that De Souza was formally charged, for all relevant purposes, when the denúncia against him was signed by a judge in August 1993.  It also ruled that the dismissal of the Brazilian charge against De Souza did not relieve him of his obligation under United States law to disclose the charge to immigration officials.

De Souza was tried twice.  At both trials De Souza requested jury instructions on the defenses of advice of counsel and good faith, but the district court denied those requests.  The first trial ended in a mistrial because the jury deadlocked.  At the second trial, however, the jury found De Souza guilty of Count 1.  It returned a special verdict finding that De Souza had lied on his Form N-400 when he said that he had never been charged with a crime, had never given any United States official any false information, and had never lied to any United States official to gain immigration benefits.  The jury acquitted De Souza of Count 2, which charged him with lying during his citizenship interview.  The district court entered judgment on the verdict and sentenced De Souza to time served and to one year of supervised release.  This is his appeal.

### III.

On appeal De Souza raises three challenges to his conviction.  First, he contends that the district court erred by ruling that he was required to disclose the Brazilian charge on his Form N-400 even though it was a legal nullity under Brazilian law.  Second, he contends that the district court erred by failing to

instruct the jury on his advice of counsel and good faith defenses.  Third, he contends that the evidence at trial was insufficient to support his conviction.

## A.

We begin with De Souza's contention that the district court erred by ruling that he was required to disclose the Brazilian charge on his Form N-400 even though the charge had been dismissed on statute of limitations grounds, which he says rendered it a nullity under Brazilian law.  De Souza also asserts that the district court should have instructed the jury that the dismissal of the charge against him meant he did not have to disclose it.

We review de novo questions of law, including questions of foreign law. See United States v. Keen, 676 F.3d 981, 989 (11th Cir. 2012); United States v. Schultz, 333 F.3d 393, 401 (2d Cir. 2003).  We review de novo the correctness of the jury instructions the district court gave.  United States v. Hill, 643 F.3d 807, 850 (11th Cir. 2011).  We review only for abuse of discretion the district court's refusal to give a requested jury instruction.  Id.

The district court was correct in its ruling that the dismissal of the Brazilian charge had no effect on De Souza's obligation to disclose the charge on his immigration forms.  Whether De Souza violated 18 U.S.C. § 1015(a) in his statements on the Form N-400 is a question of United States law, not Brazilian law.  The government created the Form N-400 under the authority granted by

8

8 U.S.C. § 1445(a), which requires applicants for naturalization to submit "a sworn application in writing . . . which application shall be on a form prescribed by the [Secretary of Homeland Security] and shall include averments of all facts which in the opinion of the [Secretary] may be material to the applicant's naturalization." Id.; see also 8 C.F.R. § 316.4 ("The applicant will apply for naturalization in accordance with instructions provided on the form prescribed by USCIS for that purpose.").[4]  And the scope of the criminal history questions on the Form N-400 could not be clearer.  The form instructed De Souza that he must disclose criminal charges "even if [his] records have been sealed, expunged, or otherwise cleared," and "even if someone, including a judge, law enforcement officer, or attorney, told [him] that it no longer constitutes a record or told [him] that [he does] not have to disclose the information."  That means even if De Souza's murder charge is a nullity under Brazilian law, he still violated § 1015(a) as a matter of United States law when he denied the historical fact that he had been charged.

De Souza argues that our decision in Garces v. United States Attorney General, 611 F.3d 1337 (11th Cir. 2010), compels us to look to Brazilian law to decide whether he was required to disclose the murder charge on his Form N-400. In Garces we considered whether a past conviction that had been vacated because

_____

[4] As written, the statute vested authority over the naturalization process in the Attorney General.  See § 1445(a).  But that authority has since been transferred to the Secretary of Homeland Security.  See 6 U.S.C. §§ 202(2), 271(b)(2); 8 U.S.C. § 1103(a)(1).

of a procedural defect in the underlying proceedings still counted as a "conviction" for immigration purposes.  See id. at 1344.  We held that it did not, relying on our earlier decision in Alim v. Gonzales, 446 F.3d 1239 (11th Cir. 2006).  See Garces, 611 F.3d at 1344–45.  De Souza argues that his Brazilian murder charge, like the vacated conviction in Garces, no longer counts for immigration purposes because it was dismissed on the basis of a procedural defect and is a legal nullity in the charging jurisdiction.

But Garces does not help De Souza.  In Garces we made clear that it is a question of United States law, not state or foreign law, whether a vacated conviction still counts as a "conviction" for immigration purposes.  See id. at 1344 ("In the eyes of the State of Florida that conviction is a legal nullity.  Whether it is a nullity for purposes of 8 U.S.C. § 1182(a)(2) and other provisions of federal immigration law that refer to criminal convictions, depends on the reason it was vacated."); see also Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1269 (11th Cir. 2004) (approving of the Board of Immigration Appeals' conclusion that the federal definition of a "conviction" is not "dependent on the vagaries of state law").  Along similar lines, United States law governs whether the statements De Souza made on his Form N-400 violated § 1015(a).

Beyond that, Garces is inapposite.  The part of Garces that De Souza relies on is an interpretation of a statute — it is based on the meaning of the word

10

"conviction" as used in the Immigration and Nationality Act.  See 611 F.3d at 1344–45.  What we are dealing with here is a different question: whether De Souza made a false statement in violation of § 1015(a) when he denied having been "charged" with any crimes on his Form N-400.  The instructions on the Form N-400 make clear that when it asks whether the applicant has ever been "charged" with an offense, the applicant is supposed to disclose all criminal charges — even those that have been "sealed, expunged, or otherwise cleared" and those that "no longer constitute[ ] a record."  That means De Souza was required to disclose his Brazilian murder charge regardless of the fact that it had been dismissed, and regardless of the effect of that dismissal under Brazilian law.  The district court was correct.

### B.

We next consider De Souza's contention that the district court erred by failing to instruct the jury on his advice of counsel and good faith defenses.  When we review the district court's refusal to give an instruction, "we ask whether the requested instruction is correct, not adequately covered by the charge given, and involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case."  United States v. Duperval, 777 F.3d 1324, 1334 (11th Cir. 2015) (quotation marks omitted).

11

The district court did not abuse its discretion by denying De Souza's request for a good faith instruction because the requested instruction was adequately covered by the court's charge. The court instructed the jury that to find De Souza guilty, it had to find that he acted "willfully" — a term the court defined as "act[ing] with the intent to do something the law forbids." Based on that instruction, the jury had to rule out the possibility that De Souza made his false statements in good faith in order to find him guilty of violating § 1015(a). See United States v. Martinelli, 454 F.3d 1300, 1315–16 (11th Cir. 2006).

The district court also did not err by denying De Souza's request for an instruction on the advice of counsel defense. He requested that instruction as a defense to one of the government's theories of the case: that De Souza lied on his Form N-400 when he denied ever giving false information to United States officials and ever lying to gain immigration benefits. In 2010, in his request for a replacement I-94, he stated that he had entered the United States legally on a temporary visa in November 2000. But in his 2012 green card applications he stated that he had entered the United States without inspection — that is, unlawfully — in November 2000. Those statements are inconsistent. De Souza wanted to explain the inconsistency at trial by arguing that his attorney had advised him to change his answer on the green card applications, and that he had relied on his counsel's advice without any intent to lie.

12

A defendant has the right to have the jury instructed on a theory of defense only if the defense is valid and if some evidence came out at trial that is relevant to the defense. Duperval, 777 F.3d at 1334. To be entitled to an advice of counsel instruction, "a defendant must show that (1) he fully disclosed all material facts to his attorney; and (2) he relied in good faith on advice given by his attorney." United States v. Condon, 132 F.3d 653, 656 (11th Cir. 1998). An advice of counsel instruction is not warranted if it is based on "mere suspicion or speculation." Id. (quotation marks omitted).

The only evidence that De Souza points to in support of this defense is a stray comment his counsel made during the citizenship interview. When De Souza was asked about the inconsistency in his statements about how he entered the country, his counsel stated: "[W]ell, I said that [De Souza entered unlawfully] because he has 245-I, but . . . [w]e tried to file an I-102, I think, years ago, we couldn't find the record." That comment suggests that it was counsel's idea for De Souza to claim he entered the United States unlawfully because there was no known record of him entering lawfully, and because he qualified for a green card regardless of how he entered the country.

But the evidence does not show that De Souza disclosed all material facts to his attorney; at most the evidence shows that his attorney knew about De Souza's earlier attempt to obtain a replacement I-94. We are left to speculate about

13

whether De Souza revealed other material facts to his attorney, such as when and how he actually entered the United States. Speculation will not suffice.

And other evidence suggests that De Souza <u>hid</u> some facts from his attorney. His green card applications, which his attorney prepared, stated that De Souza had entered the United States in November 2000, but the evidence clearly shows that he had entered the United States no later than 1998, when he obtained a driver's license in Florida — as De Souza himself concedes on appeal. Indeed, De Souza's attorney said at the citizenship interview that his client might have given him the wrong entry date.

The record also shows that De Souza withheld from his attorney a related and crucial fact (albeit one that is not directly relevant to his advice of counsel defense): that he had been charged with murder in Brazil. De Souza's attorney expressed surprise during the citizenship interview when the interviewing official confronted De Souza about the charge. Because De Souza withheld that fact from his attorney, there is no reason to assume that he was candid with his attorney in other respects.

Because there is no evidence that De Souza disclosed all of the material facts to his attorney, he was not entitled to an advice of counsel instruction. <u>See</u> <u>Condon</u>, 132 F.3d at 656.

14

C.

Finally, we address De Souza's contention that there was insufficient evidence at trial to support his conviction. We review the sufficiency of the evidence <u>de novo</u>, viewing the facts in the light most favorable to the government and making all reasonable inferences and credibility choices in favor of the verdict. <u>United States v. Schmitz</u>, 634 F.3d 1247, 1259 (11th Cir. 2011). Where, as here, the indictment charges several different means of violating a statute, the government need only prove one of those means to convict the defendant. <u>United States v. Simpson</u>, 228 F.3d 1294, 1300 (11th Cir. 2000). Here the jury found in a special verdict that De Souza had violated § 1015(a) in all three ways charged in the indictment.

On appeal De Souza challenges only the mens rea element of his conviction.[5] He argues that it was reasonable for him to believe he had never been charged with a crime in Brazil because he was never arrested for it, was never served with the pronúncia, and was told when he returned to Brazil that there were

---

[5] The parties disagree about what mens rea § 1015(a) requires — "knowingly" or "willfully." The statute says that a person violates it if he "knowingly" makes a false statement under oath in a matter related to naturalization, citizenship, or the registry of aliens. <u>See</u> § 1015(a). Our predecessor circuit, however, held that a person must act "willfully" in order to violate the statute. <u>See Zebouni v. United States</u>, 226 F.2d 826, 828–29 (5th Cir. 1955). That holding binds us. <u>See Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). The government argues that the <u>Zebouni</u> court used the word "willfully" imprecisely and in a different way than modern courts do. But the district court disagreed and instructed the jury on willfulness. Because it does not affect the outcome of this appeal, we will assume that a mens rea of willfulness is required.

15

no criminal proceedings pending against him. That means, he argues, that he did not willfully make a false statement when he said on his Form N-400 that he had never been charged with a crime, had never lied to a United States official, and had never lied to gain immigration benefits.

But the evidence was sufficient to show that De Souza knew about the Brazilian murder charge when he filled out the Form N-400 in July 2017, and that he knew lying about the charge was a crime. A Brazilian court held a preliminary hearing before it issued the pronúncia against him in September 2000, and De Souza was represented by counsel at that hearing. A reasonable jury could have inferred that if De Souza was represented by counsel, he must have known about the hearing and the underlying murder charge. A reasonable jury also could have credited De Souza's admission at the citizenship interview that he found out about the charge in 2001 or 2002 — an admission that is roughly consistent with De Souza finding out about the charge in late 2000, before the hearing on the pronúncia. And a reasonable jury could have inferred from the timing of De Souza's return to Brazil that he knew about the charge: after living in the United States for 15 years, De Souza returned to Brazil for the first time a mere two months after the charge against him was dismissed. As for whether De Souza knew that making a false statement on his Form N-400 was a crime, he clearly did because he certified that his answers were correct under penalty of perjury. All of

16

that means there was sufficient evidence to show that De Souza willfully made a false statement on his Form N-400 when he said that he had never been charged with a crime.[6]

**AFFIRMED.**

---

[6] Because there was sufficient evidence to support one of the three charged means of violating § 1015(a), we need not consider whether sufficient evidence supported the other two charged means of violating the statute.  See United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000).

17